# United States District Court

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| LUCINDA VINE, KRISTY POND, on behalf | § | |
| of themselves and all others similarly situated, | § | Civil Action No. 4:18–CV–450 |
| v. | § | Judge Mazzant |
| | § | |
| PLS FINANCIAL SERVICES, INC. and PLS | § | |
| LOAN STORE OF TEXAS, INC. | § | |
| | § | |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

This matter is before the Court on Plaintiffs Lucinda Vine and Kristy Pond's Motion for Class Certification [Dkt. #109], which, after careful consideration, will be granted to the extent described herein.

## BACKGROUND

Defendants PLS Loan Store of Texas, Inc. and PLS Financial, Inc. (collectively, "PLS") broker short–term loans (also known as "payday loans") to borrowers in Texas. Vine and Pond allege that, to secure a PLS–brokered loan, borrowers must present a post–dated or blank personal check for the amount borrowed in addition to a finance charge. PLS allegedly tells borrowers it will not deposit the check and, as reflected in the Credit Service Agreement (the "Standard Loan Agreement") each borrower must sign, that they will not pursue criminal charges based on the post–dated check (Dkt. #109, Exhibit 2 at p. 2; Dkt. #116, Exhibit 2 at p. 48). But Pond and Vine contend that, when a borrower misses a payment, PLS employees will deposit the check, threaten her with criminal prosecution if it bounces, and send affidavits to the district attorney (the "District Attorney" or "D.A.") falsely stating that her check was not post–dated or meant to be held (the "Hot Check Affidavits"). This prompts the District Attorney to send the borrower a letter advising that she will face criminal charges if she does not pay off the amount of the bounced check as well

---

[1] This Amended Order corrects minor scrivener errors included in its prior iteration (Dkt. #126).

as statutory merchant fees and D.A. service fees. The record reflects that just "a few" PLS employees were responsible for referring the checks, and that each of these checks was referred to the Collin County District Attorney's office (Dkt. #109, Exhibit 5 at p. 7; Dkt. #109, Exhibit 6; Dkt. #116, Exhibit 2 at p. 3).

Vine and Pond subsequently filed a class action against PLS on behalf of borrowers who received such letters for common law fraud and violations of the Texas Deceptive Trade Practices Consumer Protection Act (the "DTPA").[2] Vine and Pond now move to certify a class comprised of Texas residents who (1) "received a payday loan (as defined by Tex. Fin. Code §393.221) from a PLS Loan Store," (2) "failed to timely pay back the payday loan," (3) and had a criminal complaint filed against them by PLS "after December 17, 2011 for a bad check to collect or recover this payday loan" (Dkt. #76 at p. 2). Plaintiffs seek actual damages for the merchant and D.A. fees incurred, punitive/fraud damages, reasonable attorney's fees, and court costs (Dkt. #76 at pp. 9–10; Dkt. #109, at p. 14).

PLS questions whether such a class can be certified. PLS contends that the Standard Loan Agreement requires borrowers to waive their rights to participate a class action lawsuit. The relevant terms, included as part of the agreement's "Arbitration Provision," states that:

> Arbitration is a process in which persons with a dispute: (a) waives their rights to file a lawsuit and proceed in a court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third party (an "arbitrator") for a decision . . . Therefore, You acknowledge and agree as follows:
>
> . . .
>
> (c) You are giving up your right to serve as a representative, as a private attorney general, or in any other representative capacity, or to participate as a member of a class of claimants, in any lawsuit filed against us, the Lender and/or our/its related third parties. Your dispute may not be consolidated with the dispute of any other person(s) for any purpose(s).

---

[2] Although Vine and Pond also brought other causes of action, these have been dismissed on a motion for summary judgment. *See generally Vine v. PLS Fin. Srvs, Inc.*, No. EP–16–cv–31–PRM, 2018 WL 456031 (W.D. Tex. 2018).

3. Except as provided in <u>Paragraph 6</u> below, all disputes including any Representative Claims against us, the Lender and/or our/its related third parties shall be resolved by binding arbitration <u>only</u> on an individual basis with you.

Therefore, the Arbitrator shall not conduct class action arbitration; that is, the arbitrator shall not allow you to serve as a representative, as a private attorney general, or in any other representative capacity for others in the arbitration. Notwithstanding any other provision herein to the contrary, the validity, effect, and enforceability of this waiver of class action lawsuit and class–wide arbitration shall be determined solely by a court of competent jurisdiction and not by the arbitrator. If the arbitrator fails or refuses to abide by the class–action arbitration waiver and the court refuses to enforce the class–wide arbitration waiver, the parties agree that the dispute will proceed in court under applicable court rules and procedures, following all appeals, if any, of the court's decision.

(the "Class Action Clause") (Dkt. #116, Exhibit 1 at p. 18) (emphasis omitted). PLS also argues that Plaintiffs cannot meet the requirements to certify a class under Federal Rule of Civil Procedure 23.

Plaintiffs, on the other hand, insist that they have met Rule 23's requirements. They also argue that the Class Action Clause applies only if the dispute is arbitrated and not litigated in federal court. They note that the Class Action Clause is part of the Arbitration Provision, which the Court has found that PLS may not invoke (*see* Dkt. #37; Dkt. #53; Dkt. #125).[3] *See also Vine v. PLS Financial Srvs., Inc.*, 689 F. App'x 800, 802 (5th Cir. 2017) (affirming the order waiving the right to compel arbitration).

## LEGAL STANDARDS

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). "The purpose of a class action is to avoid multiple actions and to allow claimants who could not otherwise litigate their claims individually

---

[3] The orders denying the motion to compel arbitration and the first corresponding motion to reconsider were decided by a district court in the Western District of Texas. *See Vine v. PLS Fin. Servs., Inc.*, 226 F.Supp.3d 719 (W.D. Tex. 2016), aff'd by, 689 F. App'x 800 (5th Cir. 2017); *Vine v. PLS Fin. Servs., Inc.*, 226 F.Supp.3d 708 (W.D. Tex. 2016). But, due to a subsequent transfer, the order denying the second motion to reconsider was decided by this Court. *See Vine v. PLS Fin. Servs., Inc.*, No. 4:18–CV–450, 2019 WL 1325895 (E.D. Tex. Mar. 25, 2019).

to bring them as a class." *Id.* (citing *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 349 (1983)). Class certification is governed by Federal Rule of Civil Procedure 23 and subject to the district court's "great discretion." *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Montelongo v. Meese*, 803 F.2d 1341, 1351 (5th Cir. 1986)) ("[T]he district court maintains great discretion in certifying and managing a class.").

To certify a class under Rule 23, plaintiffs must show that the proposed class meets the requirements of Rule 23(a) and at least one of the three criteria for certification under Rule 23(b). *See* FED. R. CIV. P. 23. Rule 23(a) imposes four prerequisites on a class seeking certification: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Ackal v. Centennial Beauregard Cellular, LLC*, 700 F.3d 212, 216 (5th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) (alterations in original). Because this motion seeks to certify a class action for damages under Rule 23(b)(3), Pond and Vine must also establish (5) predominance ("that the questions of law or fact common to class members predominate over any questions affecting only individual members"); and (6) superiority ("that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). FED. R. CIV. P. 23(b)(3).

Although the court should "perform a 'rigorous analysis' to determine whether to certify a class, it may not require a plaintiff to establish his claims at the class certification stage." *See Booth v. Galveston Cty.*, No. 3:18–cv–00104, 2019 WL1129492, at *1–*2 (S.D. Tex. March 12, 2019) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)); *see also Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free–ranging merits inquiries at the certification stage. Merit questions may be

considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (citation omitted). Simply stated, the certification stage is not a "dress rehearsal for the merits." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014).

## ANALYSIS

PLS argues that the proposed class members may not participate in this class action pursuant to the Standard Loan Agreement. PLS further argues that the proposed class cannot be certified under Federal Rule of Civil Procedure 23. The Court addresses these arguments in turn.

### I. **Class Action Waiver**

PLS contends that the proposed class may not be certified because the proposed class members waived their rights to participate in a class action pursuant to the Arbitration Provision's Class Action Clause (Dkt. #116, Exhibit 1 at p. 18). This dispute thus turns on whether the Class Action Clause is meant to apply only in arbitration or whether it creates a separate and independent waiver, regardless. *See Cash Biz, LP v. Henry*, 539 S.W.3d 342, 354 (Tex. Civ. App.—San Antonio 2016); *accord In re Rivers*, No. 03–05671–NPO, 2010 WL 5375950, at *1 (Bankr. S.D. Miss. Dec. 22, 2010); *Meyer v. Kalanick*, 185 F.Supp.3d 448, 452–54 (S.D.N.Y. 2016).[4] The Standard Loan Agreement provides that, unlike other terms, those in the Arbitration Provision are governed by the Federal Arbitration Act (Dkt. #109, Exhibit 1 at p. 4). This means that state–law principles apply to decide issues based on general contract principles, and federal law applies as to issues specific to arbitration contracts. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Because this question concerns the interpretation of the Arbitration Provision based on general contract principles, Texas law applies. *Compare with Vine*, 2019 WL 1325895, at 3 (explaining

---

[4] Because the Court finds that the Class Action Clause is limited to disputes in arbitrations, the Court does not consider Plaintiffs' argument that PLS may not rely on the class action due to the prior orders finding that PLS waived its right to compel arbitration. *See supra* note 3.

that issues that pertain only to arbitration agreements—such as the waiver of an arbitration provision through substantial invocation of the judicial process—are based on federal common law) (citing *Miller Brewing Co. v. Fort Worth Distributing Co., Inc.*, 781 F.2d 494, 497 & n.4 (5th Cir. 1986)).

PLS insists that the Class Action Clause was meant to apply whether or not the dispute is being tried in arbitration, noting that:

> [The clause] states broadly that each Plaintiff gave up her right to represent or participate in a "class of claimants, in *any* lawsuit," and addresses the enforceability of both "this waiver of class action lawsuit *and* class–wide arbitration.

(Dkt. #115 at p.7) (emphasis added in PLS's brief). According to PLS, "references to 'class action' and 'lawsuit' would be superfluous if the waiver only applied to arbitration" (Dkt. #115 at p. 7).

But, when reading these terms in context, PLS' interpretation appears to render substantially more language superfluous. *See Tenn. Gas Pipeline Co. v. F.E.R.C.*, 17 F.3d 98, 102 (5th Cir. 1994) ("A cardinal rule of contract interpretation in Texas requires courts to review the entire contract in order to determine its meaning; courts should not consider any single provision in isolation."). The Arbitration Provision—which is separated from the remainder of the Standard Loan Agreement by a black box (the "Black Box")—summarizes the arbitration process before asking signatories to "*[t]herefore* . . . acknowledge and agree" to give up certain rights by agreeing to arbitrate (Dkt. #116, Exhibit 1 at pp.17–19) (emphasis added). The Arbitration Provision's next eight paragraphs discuss the rights given up in arbitration, including the right to class–wide arbitration (Dkt. #116, Exhibit 1 at pp.17–19). PLS's interpretation—which asks the Court to find that terms in the Arbitration Provision are meant to apply outside the arbitration context—would render the Black Box and the introductory paragraph ending with the use of "therefore" superfluous. And the need to interpret the Class Action Clause pursuant to the Federal Arbitration

Act—as the Loan Contract requires of all terms in the Arbitration Provision—would make little sense.

As other courts addressing this issue have recognized, the most plausible way to interpret a class action waiver in the middle of an arbitration provision is as part of the explanation of the rules, rights, and procedures that apply if a dispute is arbitrated—"<u>not</u> as an independently effective waiver of the right to pursue a class action outside the arbitration context." *See Meyer*, 185 F.Supp.3d at 453–54 (finding that the class action waiver inapplicable in a dispute in court on these grounds) (emphasis in original); *Cash Biz*, 539 S.W.3d at 354 ("The class–action waiver provision is not an independent agreement or provision, but is included within the arbitration provision in the Loan Contracts. Therefore applicability of the class action waiver provision is dependent upon the validity and applicability of the arbitration provision."); *Rivers*, 2010 WL 5375950, at *3 ("The Court finds that it is not reasonable to read the Purported Class Action Waiver as applicable to litigation since the Arbitration Provision disposed of any right Rivers had to litigate claims 'arising from or related to [the Contract].' Based on the language in the Arbitration Provision, it is clear that the parties intended the Purported Class Action Waiver to apply only to arbitration.").

The Standard Loan Agreement's intent to limit the Class Action Clause to arbitrations is especially evident when considering how the Standard Loan Agreement treats the waiver of the right to a jury trial. The agreement advises borrowers that they waive their right to a jury trial in two separate instances—once as a clause within the Arbitration Provision, and another outside of it (*see* Dkt. #116, Exhibit 1 at pp. 17–18). By so doing, the agreement makes clear that a borrower has waived her right to have a jury hear her dispute in arbitration or in court. It follows that the Class Action Clause was meant to apply only in arbitration. PLS drafted the Standard Loan Agreement. If it wanted borrowers to waive their right to participate in a class action when litigated

in court, it would have made that just as clear.  *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811 (Tex. 2012) ("[T]hose other contract provisions support our reading of the contract because they show that the parties knew how to state clearly when some risks were not to be assumed by MasTec.").   Any ambiguity stemming from the Standard Loan Agreement's failure to do so must be construed against PLS as the drafter.  *See Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990) ("It is well–established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used.").

In short, the proposed class members did not waive their right to participate in a class action in federal court.

II.     **Rule 23's Requirements**

In much of their briefing, Pond and Vine presuppose that the proposed class encompasses only those who have paid the statutory merchant and D.A. service fees after receiving the letter from the District Attorney's office (*see* Dkt. #109 at pp. 13, 14).   But Plaintiffs' current proposed class includes all Texas residents who defaulted on a payday loan from a PLS store and against whom Defendants filed a criminal complaint to the District Attorney—without regard to whether each class member paid the D.A. or Merchant fees referenced in the letters the D.A. may have sent.  This would render Plaintiff's argument that every class member suffered the same kinds of injuries (the unwarranted payment of the fees) inaccurate.  To ensure that the proposed class meets Rule 23's requirements—in a way that is consistent with Plaintiffs' briefing—the Court will modify the class to include only those who paid some or all of the additional fines and fees to the D.A.'s office in connection with the letter.  *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 & n.7 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision" since "holding plaintiffs to the plain language of their definition would

ignore the ongoing refinement and give–and–take inherent in class action litigation, particularly in the formation of a workable class definition."); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100 (1981) ("[A] district court has both the duty and the broad authority to exercise control over a class action."). The "Proposed Class" is thus now defined to include:

> Texas residents who (1) received a payday loan (as defined by Tex. Fin. Code § 393.221) from a PLS Loan Store, (2) failed to timely pay back the payday loan, (3) had a criminal complaint filed against them by PLS Loan Store and/or PLS Financial Services after December 17, 2011 for a bad check to collect or recover this payday loan, (4) received a letter from the District Attorney advising them to pay off the payday loan and certain fees or face criminal prosecution, and (5) paid some or all of the fees referenced in this letter.

The Court will consider Rule 23's requirements based on this modified class definition.

### a. **Numerosity**

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable," FED. R. CIV. P. 23(a)(1), such as when a "class consist[s] of more than forty members." *See Mullen*, 186 F.3d at 624 (citing 1 Newberg on Class Actions § 3.05 at 3–25 (3d ed. 1992)). Records obtained from the Collin County District Attorney's Office, the only district attorney's office in which PLS referred Hot Check Affidavits, reflect that at least eighty or so borrowers would fall into the proposed class definition as revised (Dkt. #109, Exhibit 6). Based on the number of class members and Defendants' lack of opposition, the Proposed Class definition satisfies the numerosity requirement.

### b. **Commonality**

The commonality requirement demands that "there [be] questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "The threshold of 'commonality' is not high." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Commonality requires "only that resolution of the common questions affect all or a substantial number of the class members." *Jenkins*, 782 F.2d at 472; *see also Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th

Cir. 1997) ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.").  The parties do not dispute that common questions of law or fact affect all or a substantial number of the class members in this case.  Nor does the Court have reason to find otherwise for the reasons explained in the Court's predominance analysis.  *See Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (explaining that the predominance requirement is essentially a more demanding version of the commonality requirement).  Commonality is satisfied as a result.

### c. **Typicality**

The typicality requirement demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  "Like commonality, the test for typicality is not demanding.  It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."  *Mullen*, 186 F.3d at 625.  The question, then, is whether Plaintiffs' experiences would be typical of those in the Proposed Class.

Pond and Vine have met their low burden on typicality here.  The record reflects that, like the other putative class members, they obtained payday loans through PLS, failed to repay those loans, had "criminal complaints" filed to the District Attorney against them by PLS, received a letter from the District Attorney's office, and paid some or all of the fees referenced in that letter. In short, Plaintiffs have established that they have suffered the same interests and have generally suffered the same types of injuries as the rest of the class.

PLS maintains that Plaintiffs' claims are atypical of those in the Proposed Class.  It notes that, because the District Attorney did not formally file a criminal complaint against Pond or Vine (Element No. 3), "they do not even fall within their [own] proposed class" (Dkt. #115 at p. 7).  The Court disagrees.  Pond and Vine are not referring to "formal charging documents" when they use

the phrase "criminal complaint" in their class definition. Pond and Vine propose a class of Texas residents whom "the PLS Loan Store (or any of the named Defendants in this case) filed a criminal complaint against" (Dkt. #76 at p.2). Because PLS plainly lacks the authority to file formal criminal charges, the phrase "criminal complaint" necessarily refers to the submission of a complaint or grievance to a law enforcement agency alleging unlawful activity. *See Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 340–41 (5th Cir. 2016) (considering the extent to which two dueling interpretations of the proposed class would be consistent with the other allegations in the Complaint); *Complaint*, Merriam–Webster's Collegiate Dictionary (10th ed.) (defining "complaint" as an expression of grief, pain, or dissatisfaction"). Here, Plaintiffs provide evidence that Defendants filed sworn affidavits accusing Plaintiffs of committing theft by check, thereby "complaining" to local law enforcement that they had been the victims of a crime (Dkt. #109, Exhibit 7). PLS's argument that Plaintiffs are not a part of a class of people against whom PLS filed criminal complaints fails as a result.[5]

Second, PLS contends that Plaintiffs "do not know any of the facts underlying each other's" or the putative class members' claims (Dkt. #115 at p. 9). But PLS cites no authority requiring proposed class representatives to have knowledge of each putative class members' specific experiences simply to qualify as typical. Again, to meet the low threshold for typicality, Plaintiffs' claims must merely have legal and remedial theories similar to the putative class members, *see Mullen*, 186 F.3d at 626, which has been met.

Third, PLS contends that Plaintiffs' claims are atypical because their damages calculations

---

[5] Even if the proposed definition could be interpreted as PLS suggests, the Court would elect to modify the class definition appropriately rather than barring Pond and Vine from pursuing class relief. *See Monumental*, 365 F.3d at 414 & n.7 ("District courts are permitted to limit or modify class definitions to provide the necessary precision" since "holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give–and–take inherent in class action litigation, particularly in the formation of a workable class definition."); *see also Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 337 (5th Cir. 2017) (explaining in a different context that district courts are to "construe the procedural rules with a preference toward resolving the case on the merits and avoiding dismissals based on a technicality") (citing Fed. R. Civ. P. 1).

may be different. PLS notes that Vine received and cashed a refund check PLS sent her for the

fees she incurred when responding to the D.A.'s letter.[6] In other words, PLS argues that Vine's

claims are atypical because PLS can raise an offset defense against her. *See Giles v. General Elec.

Co.*, 245 F.3d 474, 494 n.36 (5th Cir. 2001) ("Our caselaw supports Giles's contention that an

offset indeed is an affirmative defense.").[7] But the Fifth Circuit has refused to find typicality is

lacking merely because the defendant may have a unique defense against the Plaintiff. *See Feder

v. Elec. Data Sys. Corp.*, 429 F.3d 125, 137 (5th Cir. 2005) ("[W]e reject appellants' claim that

the presence of an arguable unique defense necessarily destroys typicality."). After all, although

some unique defenses may be "a major focus of the litigation," others may be insignificant or

improbable. *See City of San Antonio v. Hotels.com*, No. SA–06–CA–381–OG, 2008 WL 2486043,

at *6 (W.D. Tex. May 27, 2008) ("If the representative plaintiff's claim is subject to a unique

defense that is reasonably likely to be a major focus of the litigation, the claim is atypical.");

*Lehocky v. Tidel Technologies, Inc.*, 220 F.R.D. 491, 502 (S.D. Tex. 2004) ("Again, the key

typicality inquiry is whether a class representative would be required to devote considerable time

to rebut Defendants' claims.") (citing *In re Enron Corp. Securities Litig.*, 206 F.R.D. 427, 456

(S.D. Tex. 2002)).[8] PLS cannot seriously contend that questions about whether it is entitled to an

offset against Vine would be the major focus of the case. *See Villanueva v. Liberty Acquisitions*

---

[6] It is not clear whether Pond also received and cashed such a check. The Court would reach the same conclusion, regardless.

[7] PLS's argument that Vine is atypical from the proposed class members because she cashed the check from PLS also appears disingenuous. PLS's Vice President of Operations states in a sworn affidavit that (after this lawsuit was filed) PLS sent refund checks to all of the class members (Dkt. #116, Exhibit 2 at p. 49). To the extent others in the class have cashed checks, and PLS intends to seek an offset, a subclass can be created. Any need to do so would not impact the Court's predominance analysis. *See Torres v. S.G.E., Mgmt, L.L.C.*, 838 F.3d 629, 645 n.74 (5th Cir. 2016) (en banc) (quoting *Tyson Foods, Inc. v. Bousaphakeo*, 136 S.Ct. 1036, 1045 (2016)) ('When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or *some affirmative defenses peculiar to some individual class members*.''') (emphasis in *Torres*).

[8] *See also Beck v. Maximus*, 457 F.3d 291, 300 (3d Cir. 2006) ("To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial."); Rubenstein, *supra* § 3:45 ("A unique defense will render the proposed class representative's claims atypical only if it is likely to be a major focus of the litigation and not if it is insignificant or improbable.") (quotations and citations omitted).

*Servicing, LLC*, 319 F.R.D. 307, 319–20 (D. Or. 2017) (rejecting the argument that an offset would destroy typicality) (citing *Eatmon v. Palisades Collection LLC*, No. 2:08–cv–306–DF–CE, 2011 WL 147680, at *12 (E.D. Tex. Jan. 18, 2011)); *Eatmon*, 2011 WL 147680, at *12 ("The possibility of individualized proof on actual damages is not necessarily a bar to class certification").[9]

The typicality requirement is satisfied for these reasons.

### d. **Adequacy**

Rule 23(a)(4) requires representative parties to "fairly and adequate protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Fifth Circuit has held that this requirement "mandates an inquiry into the zeal and competence of the representative[s'] counsel and into the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). PLS does not challenge that Plaintiff's counsel would adequately represent the interests of the class here, and the Court has no reason to find otherwise. Plaintiff's attorneys have extensive experience litigating consumer class actions (*see* Dkt. #109 at pp. 19–20). *See Bywaters v. United States*, 196 F.R.D. 458, 468 (E.D. Tex. 2000) (finding class counsel adequate in light of years of experience).

But PLS does question whether Plaintiffs are able to adequately serve the interest of the other Proposed Class members. PLS contends that Plaintiffs are "utterly unengaged and unfamiliar with the claims they purport to bring" due to their purported lack of familiarity with the facts supporting the other class members' claims and with court filings. PLS's argument is unpersuasive—even accepting its characterization of the facts. Class representatives are not

---

[9] Allowing Defendants to defeat typicality based on an unsolicited check PLS sent to a named plaintiff may be inappropriate, regardless. The Fifth Circuit has warned courts against allowing defendants to "attempt to 'pick off' individual plaintiffs before class certification '[b]y tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action." *See Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 315 (5th Cir. 2015) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. Unit A July 1981)).

required to read every pleading, or know all of the specific facts supporting every particular class member's claims. *See Rubenstein v. Collins*, 162 F.R.D. 534, 538 (S.D. Tex. 1995). They are, instead, "merely asked to have a general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants." *Id.*

The Fifth Circuit's decision in *Horton* is illustrative. 690 F.2d at 484–85. In that case, three elementary school students (the "Students") and their next friend (the "Next Friend") brought a class action lawsuit against a school district (the "School District") challenging its canine drug detection program under 42 U.S.C. § 1983. The School District argued that the Next Friend could not adequately represent the interests of the proposed class since he had not read the complaint. The Fifth Circuit was unpersuaded. It reasoned that the Next Friend had nevertheless demonstrated "commendable familiarity with the complaint and with the concept of a class action." *See id.* The Fifth Circuit consequently found "no reason to doubt the ability and willingness of the named plaintiffs and their next friend to participate in and control the litigation." *See id.*

The Court has no reason to question Pond or Vine's ability and willingness to participate and control this litigation for similar reasons. At their depositions, each explained that this case concerns PLS's decision to cash her post–dated or hold check and to refer the case to the D.A. after the check bounced (*see* Dkt. #109, Exhibit 10 at pp. 6–7; Dkt. #109, Exhibit 11 at p. 4). Pond and Vine also seem to appreciate that they are representing those who are similarly situated as part of a class, and have expressed substantial interest in the outcome of this litigation (*see* Dkt. #109, Exhibit 10 at p. 15; Dkt. #109, Exhibit 11 at pp.15, 18). Their investment in this case is especially admirable considering the fairly low stakes involved. *See in re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1057 & n.13 (S.D. Tex. 2012) (explaining that less is expected of class representatives in smaller cases since they have "so little stake that it

would be irrational for them to take more than a tangential interest").[10] The Court concludes that Pond and Vine are sufficiently apprised of this action for these reasons. *See Eatmon v. Palisades Collection, LLC*, No. 2:08–cv–306–DF–CE, 2010 WL 1189571, at *7 (E.D. Tex. March 5, 2010); *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 209–10 (N.D. Tex. 1997); *Rubenstein*, 162 F.R.D. at 538 (each finding general familiar with the case sufficient, even though class representatives were unaware of filings or other details specific to the case).

PLS also argues that Plaintiffs' criminal backgrounds and prior bad acts render them inadequate to serve as class representatives, who are expected to serve as honest fiduciaries for the class members. PLS cites: (1) Pond's admission that she pled "no contest" to a charge of forging a check in 2004 (Dkt. #109, Exhibit 11 at p. 3), (2) Vine's twenty–year–old arrest for the sale or delivery of narcotics, and (3) Vine's admissions she gave a police officer a false name in connection with a traffic stop over forty years ago and that she shoplifted a bottle of fingernail polish around forty years ago (Dkt. #109, Exhibit 10 at pp. 3–5).

These incidents—which PLS was apprised of only due to Plaintiffs' candor—do not give the Court concern as to their ability to represent the class. Although some class representatives have been deemed inadequate based on criminal fraud convictions, this appears to have occurred only where the convictions were relatively recent. *See, e.g.*, *Hartsell v. Source Media*, No. CIV.A.98–CV–1980–M, 2003 WL 21245989, at *1 (N.D. Tex. Mar. 31, 2003) (striking a class

---

[10] *See also Creative Montessori Learning Ctrs v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (Posner, J.) (citing *In re Cendant Corp. Securities Litig.*, 404 F.3d 173, 186–87 (3d Cir. 2005)) ("Class counsel owe a fiduciary obligation of particular significance to their clients when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf."); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) ("Contrary to the district court's approach to the issue, adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class. Although the interests of the plaintiff class certainly would be better served if the named plaintiffs fully participate in the litigation, *see, e.g., In re Goldchip Funding Co.*, 61 F.R.D. 592, 594–95 (M.D.Pa.1974), the economics of the class action suit often are such that counsel have a greater financial incentive for obtaining a successful resolution of a class suit than do the individual class members. *See Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 338–39 (1980) (plurality opinion).").

representative as inadequate where he was "convicted of conspiracy to commit mail fraud" during the pendency of the class action and "sentenced to forty–six months in prison" and failed to represent this fact to class counsel). The Court appreciates that recent convictions for crimes of moral turpitude arguably reflect the representative's *present* inability to honestly and faithfully represent a class of his peers.[11]

But there are no such concerns as to Pond or Vine. Pond pleaded "no contest" to a forgery charge for (unwittingly) using forged checks in 2004, completed the "deferred adjudication" process, and had the charge expunged from her record (Dkt. #109, Exhibit 11 at p. 3).[12] *See* TEX. CRIM. PROC. CODE § 42A.111(a) ("On expiration of a period of deferred adjudication community supervision imposed under this subchapter, if the judge has not proceeded to an adjudication of guilt, the judge shall dismiss the proceedings against the defendant and discharge the defendant."). Similarly, Vine pleaded "no contest" to the "sale or delivery" of drugs, completed the "deferred adjudication" process, and had the charge expunged from her record (Dkt. #109, Exhibit 10 at pp. 3–5). *See id.* These fifteen and twenty–year–old incidents do not reflect either Plaintiff's inability to honestly or faithfully complete represent the Proposed Class in this case at this moment. *See United States v. Mills*, 843 F.3d 210, 214 (5th Cir. 2016) ("If, however, the defendant successfully completes the community supervision term [based on a deferred adjudication], the case, for most legal purposes, 'disappears.'"). Nor do Vine's admissions that, forty years ago, she gave a false name to a police officer and stole a bottle of nail polish have any notable bearing on her *present* ability to serve as a class representative. *Cf. Dunford v. Am. DataBank*, LLC, 64 F. Supp. 3d 1378, 1396 (N.D. Cal. 2014) (finding that the named plaintiff was "not an adequate Rule 23 class

---

[11] But the Court does not decide whether a recent criminal conviction would preclude someone from serving as a class representative at this time.
[12] Pond explained at her deposition that her ex–husband gave her forged checks and represented to her that he had received them as payment from an employer for completing yard work (Dkt. #109, Exhibit 11 at p. 3).

representative" because she was "charged with first–degree burglary and vandalism" while the class certification motion was pending, was "arrested the day before the class certification hearing" for aggravated trespass, and had suffered from various other "alcoholism–related problems" during the litigation).

Plaintiffs have established that they can fully and adequately protect the interests of the Proposed Class as a result.

e. **Predominance**

A class may not be certified under Rule 23(b)(3) unless "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). This "'inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *See Tyson Foods, Inc. v. Bousphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem*, 521 U.S. at 523). A question affects only individual members if it requires the presentation of "evidence that varies from member to member." *Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing[,] [or] the issue is susceptible to generalized, class–wide proof." *Id.* A class action satisfies the predominance requirement "[w]hen 'one or more of the central issues in the action are common to the class can be said to predominate.'" *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–24 (3d ed. 2005)). This is true even when "'other important matters [may] have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting Wright, *supra* § 1778, at 123–24).

PLS argues that Plaintiff cannot satisfy the predominance for its DTPA and fraud claims because: (1) Plaintiffs seek damages that require individualized proof as to the amount of damages

(and causation of those damages), and (2) Plaintiff's claims for fraud require individualized proof of each class member's actual and justifiable reliance. The Court addresses these issues in turn.

### i. DTPA Claims

The DTPA creates a cause of action to protect consumers against "false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty[.]" TEX. BUS. & COM. CODE § 17.44. Accordingly, a plaintiff suing for violation of the DTPA must prove that (1) they are consumers; (2) Defendants engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002). Plaintiffs contend that PLS engaged in "false, misleading, or deceptive acts" (under TEX. FIN. CODE §§ 392.404, 393.504) by submitting false affidavits to a local D.A. accusing the Proposed Class of criminal conduct because the checks they had provided as security for their loans had bounced—despite promising not to do so in the Standard Loan Agreement (*see* Dkt. #109, Exhibit 2 at p. 2).

The question, then, is whether common issues of law and fact predominate over individualized issues that may have to be tried separately, such as damages. *See Tyson*, 136 S.Ct. at 1045. There appears to be three issues that will need to be decided: (1) whether the class–members are consumers; (2) whether the alleged conduct amounts to a false, misleading, or deceptive act; and (3) what damages each class member may be entitled to. PLS has not argued that Plaintiff's DTPA claims do not concern common questions of law and fact as to the first two questions, waiving their right to do so. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) (quoting *Castro v. McCord*, 259 F. App'x 664, 665 (5th Cir. 2007)) ("A party 'waives an issue if he fails to adequately brief it.'"). And the Court has no reason to find otherwise. Each class member sought and received a loan through PLS—which means that the question of whether these class members constitute "consumers" under the DTPA can be resolved on a class–wide

basis. There is also evidence that Plaintiff can show that PLS engaged in the alleged scheme using common evidentiary sources. *See Roper v. Consurve, Inc.*, 578 F.2d 1106, 1102 (5th Cir. 1978) (finding that Rule 23(b)(3)'s requirements are satisfied where class–wide evidence makes it "[un]necessary to hear evidence on each claim"). The record suggests that: (1) PLS asks all borrowers to provide post–dated checks to secure a loan (Dkt. #116, Exhibit 2 at p. 48); (2) each Class Member agrees to the same terms to obtain a loan through PLS (Dkt. #116, Exhibit 2 at p. 48), (3) these standard terms advise borrowers that PLS would not file a criminal complaint against borrowers related to the post–dated or hold checks (Dkt. #109, Exhibit 2 at p. 2); (4) just "a few" PLS employees were responsible for referring the Hot Checks for potential criminal investigation (Dkt. #116, Exhibit 2 at p. 3); (5) each of these checks was sent to the same district attorney's office (Dkt. #109, Exhibit 5 at p. 7; Dkt. #109, Exhibit 6; Dkt. #116, Exhibit 2 at p. 3); and (6) each class member suffered actual damages by paying "D.A. Service Fees and Merchant Fees" they would not have needed to pay otherwise (Dkt. #109, Exhibit 6). *See Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 572 (S.D. Tex. 2000) (finding predominance where there was evidence that "Defendants operated in the same manner, as centrally directed by Defendant Cash Today USA, with regard to all customers").[13]

PLS worries that individualized questions that may arise in deciding damages will predominate over any common issues that may exist. The Court is less concerned by the administrative issues that may result. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 337 (5th Cir. 2017) (explaining in a different context that district courts are to "construe the procedural rules with a preference toward resolving the case on the merits and avoiding dismissals based on a

---

[13] *See also Mullen*, 186 F.3d at 626 ("Moreover, this case does not involve the type of individuated issues that have in the past led courts to find predominance lacking. For example, in *Amchem Products,* 521 U.S. 591 (1997), the Supreme Court found that common issues did not predominate where the members of the plaintiff class were exposed to asbestos–containing products from different sources over different time periods, some of the class members were asymptomatic while others had developed illnesses, and the class members were from a variety of states requiring the application of a multitude of different legal standards.").

technicality") (citing FED. R. CIV. P. 1).  Plaintiffs' request for actual economic damages seem fairly uniform.  Each class member seeks damages for the "D.A. Service Fees and Merchant Fees" paid in response to the letter from the D.A. (*see* Dkt. #109 at p. 14).  The "Merchant Fee" is thirty dollars for every class member, and the "D.A. Service Fee" appears to be either thirty, fifty, or seventy–five dollars for each class member, depending on the amount loaned.  Each of the fines and fees paid also appears to be maintained in a centralized database maintained by the D.A. that lists the precise amount owed and the varying fee amounts charged to each class member (Dkt. #109, Exhibit F).  There is thus little concern that Plaintiffs' request for actual economic damages predominate over the common questions on liability.  *See Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 39–40 (1st Cir. 2003) (citing *Roper*, 578 F.2d at 1112) ("Common issues predominate where individual factual determinations can be accomplished using computer records.").

PLS notes that, based on Pond and Vine's briefing (*see* Dkt. #109, at pp. 4–5), they may be seeking damages for harms to their reputations, credit scores, and chances of employment that may require a more individualized inquiry.  The Court is reluctant to bar Plaintiffs from litigating this action on a class basis based on damages PLS believes Plaintiffs may seek.[14]  Regardless, to the extent Plaintiffs seek damages that may require a more individualized inquiry, damages can be litigated separately.  As the Supreme Court and an en banc panel of the Fifth Circuit have recently explained, predominance is not defeated merely because "'other important matters will have to be tried separately, such as damages.'"  *Torres v. S.G.E., Mgmt, L.L.C.*, 838 F.3d 629, 645 n.74 (5th Cir. 2016) (en banc) (quoting *Tyson Foods, Inc. v. Bousaphakeo*, 136 S.Ct. 1036, 1045 (2016)).[15]

---

[14] Plaintiffs' motion states that "All of the members of the Class had criminal charges filed against them which would potentially damage their reputations, hurt their credit scores, and possibly hurt their chance at employment" (Dkt. #109, at pp. 9–10).

[15] *See also Deepwater Horizon*, 739 F.3d at 815 ("[T]he class members' damage calculations give rise primarily to individual questions that are not capable of classwide resolution.  But this is not fatal" since "Rule 23(c)(4) . . . permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination.");

"After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *See Smilow*, 323 F.3d at 39–40 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 315 (3d Cir. 1998); 5 J.W. Moore, *Moore's Federal Practice* § 23.46[.1], at 23–206 to 23–207 (3d. ed. 1997 & Supp.2002)) (explaining that "[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)"). Evidence of reliance does not preclude class certification on Plaintiff's DTPA claims for these reasons.[16]

### ii. **Common Law Fraud**

The Court reaches the same conclusion as to Plaintiffs' claim for common–law fraud. Common–law fraud has five elements: (1) a material misrepresentation; (2) that was either known to be false when made or made without knowledge of its truth; (3) which was intended to induce reliance; (4) which was relied on; and (5) which caused injury. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). As explained in the summary judgment order, Plaintiffs' fraud claim is based on three distinct misrepresentations: (1) that PLS misrepresented that it would not threaten or pursue criminal charges in relation to the post–dated check a borrower must provide to secure a loan; (2) that PLS failed to disclose that PLS would send their bounced checks to the District Attorney's office; and (3) that PLS misrepresented to the District Attorney's office that the bounced checks were not postdated or meant to be held.[17] *Vine*, 2018 WL 456031, at *11–*14.

---

*Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 & n.16 (5th Cir. 2003) (citing *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 798 (10th Cir. 1970)) (explaining that "[e]ven wide disparity among class members as to the amount of damages suffered does not necessarily mean that class certification is inappropriate" due to "[t]he courts' ability to sever the damages portion of a class action suit from the liability portion"); *Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) (finding that the district court did not abuse its discretion in finding that common issues predominated even though damages may need to be tried individually); *Smilow*, 323 F.3d at 41 (citing *Jenkins*, 782 F.2d at 470–41, among other appellate court cases) ("Indeed, even if individualized determinations were necessary to calculate damages, Rule (23)(c)(4)(A) would still allow the court to maintain the class action with respect to other issues.").

[16] PLS raises its damages arguments as to "all their claims" (Dkt. #115 at p. 20). This argument is rejected as to the fraud claims for the same reasons.

[17] Plaintiffs also allege that PLS misrepresented that it would not deposit their post–dated or hold checks but the Court granted summary judgment to the extent fraud is based on this theory. *See Vine*, 2018 WL 456031, at *11–*12.

PLS argues that "Plaintiffs' fraud claims require [individualized] proof of actual and justified reliance" and cannot be tried on a class basis as a result. (Dkt. #115 at p. 18). PLS reasons that "the only way to determine whether each member actually relied on the misrepresentations and omissions is to inquire individually" (Dkt. #115 at p. 19). PLS further contends that justifiable reliance is "even more problematic" since it requires the Court to consider each member's individual characteristic (Dkt. #115 at p. 18–19). PLS adds that, on multiple occasions, the Fifth Circuit has affirmed the district court's denial of a motion for class certification on these grounds. *See, e.g., McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 549 (5th Cir. 2003).

The Court agrees with PLS to the extent Plaintiffs' fraud claim is based on PLS's alleged misrepresentation that it would not threaten or pursue criminal charges in relation to the post–dated check a borrower must provide to secure a loan, or its failure to disclose PLS's alleged practice of sending bounced post–dated checks to the District Attorney. The way each class member would have responded to these misrepresentations may vary widely from person to person. While one member may have decided not to secure a payday loan through PLS, another may have decided to do so anyways. These concerns would predominate over any issues that could be litigated commonly. *See id.* (finding that individual reliance issues would predominate where "[r]eliance will vary from plaintiff to plaintiff, depending on the circumstances of the sale [in question]"). As a result, although Plaintiffs may continue to pursue its fraud claims on these theories individually, a class may not be certified on this basis. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.").

But the Court reaches the opposite result as to Plaintiffs' fraud claim to the extent it is based on the theory that PLS misrepresented to the D.A. that the bounced checks were not postdated or meant to be held as part of a scheme to induce borrowers to pay the amounts owed on their debts and the corresponding processing fees. *See Ernst & Young, L.L.P. v. Pac. Mut. Life*

*Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) ("Thus, we have held that a misrepresentation made through an intermediary is actionable if it is intended to influence a third party's conduct," whether or not the misrepresentation is made to someone who is in privity with the plaintiff); *Vine*, 2018 WL 456031, at *15 (rejecting PLS' argument "that because Plaintiffs did not know exactly what Defendants represented to the DA's office, they could not have relied on that information" by discussing *Ernst*). Unlike as to Plaintiffs' other theories of fraud, reliance based on this misrepresentation can be proved by class–wide circumstantial evidence. The Fifth Circuit's en banc decision in *Torres* is instructive. 838 F.3d at 641–42 (finding that reliance may be properly inferred "when it follows logically from the nature of the scheme, and there is common, circumstantial evidence that class members relied on the fraud").[18] In that case, the plaintiffs filed a class action lawsuit against a company for defrauding them, in violation of the RICO statute, by falsely representing itself as a legal multi–level marketing program, rather than a fraudulent pyramid scheme. The Fifth Circuit found that a class was properly certified based on "common, circumstantial evidence that class members relied on the fraud." *Id.* at 641. It reasoned that evidence that the class members paid the Company, in and of itself, was circumstantial, class–wide evidence that each class member must have relied on the misrepresentations since there was no other reasonable explanation for the decision to pay. The Fifth Circuit also cited approvingly to other circuits that reached similar conclusions in comparable cases, noting, for instance, that:

> Similarly, in *In re U.S. Foodservice Inc. Pricing Litigation*, the Second Circuit held that customers who were allegedly overbilled by a food distributor's inflated invoices scheme could be certified as a class. It reasoned that "customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed."

---

[18] Although PLS seem to believe that class actions for fraud can never be certified, PLS's own cases suggest otherwise. *See McManus*, 320 F.3d at 549 (quoting *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693–94 (Tex. 2002) (explaining that courts may not "presume" that reliance exists but acknowledging that "'[t]his does not mean, of course, that reliance or other elements of their causes of action cannot be proved class–wide with evidence generally applicable to all class members; class–wide proof is possible when class–wide evidence exists.'").

*See id.* at 642 & n.56 (citing *Klay v. Human, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119–20 (2d Cir. 2013)).

This case is substantially similar to *Torres* and *Food Services*. Again, Plaintiffs allege that PLS lied to the District Attorney about the nature of their post–dated checks, prompting the District Attorney to advise them to either pay off their loan as well as certain processing fees, or face criminal prosecution for the bounced post–dated or hold check. Evidence from data maintained by the District Attorney's office that each class member paid the processing fees (on top of the money owed on the loan) is sufficient class–wide circumstantial evidence of reliance (Dkt. #109, Exhibit 6).[19] *See Torres*, 838 F.3d at 642 & n.56; *Foodservice*, 729 F.3d at 120 ("In cases involving fraudulent overbilling, payment may constitute circumstantial proof of reliance."); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)) ("'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence'"). Predominance is thus satisfied as to Plaintiffs' fraud claim to the extent it is based on PLS's misrepresentations to the District Attorney's office.

    f. **Superiority**

The superiority requirement demands that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In particular, a court should consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of the class action.

---

[19] Under this fraud theory, Plaintiff's reliance (not the DA's) is still at issue. *See Ernst*, 51 S.W.3d at 578 (explaining that the misrepresentation made through an intermediary must have been "intended to reach [the plaintiff] and induce reliance").

*Id.* "Determining whether the superiority requirement is met requires a fact–specific analysis and will vary depending on the circumstances of any given case." *Madison v. Chalmette Ref.*, L.L.C., 637 F.3d 551, 555 (5th Cir. 2011).

These factors weigh in favor of finding that class action is a superior to other available methods to fairly and adjudicate this dispute. Each individual class member has a fairly small amount of money at issue, making the prospect that any single member would pursue her own action unlikely (Factor A). *See Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290, 299 (5th Cir. 2001) (considering low damages amounts in considering the likelihood that an individual would pursue his own claim); *accord Boos v. AT&T, Inc.*, 252 F.R.D. 319, 326 (W.D. Tex. 2008) (collecting cases). Indeed, no other actions commenced by or against members of the class have been filed (Factors A & B). Additionally, each of the events in question occurred in Texas and Texas law applies, making this forum an appropriate forum for this dispute (Factor C). *See also Vine v. PLS Fin. Srvs, Inc.*, 2018 WL 3118691, at *2–*4 (W.D. Tex. June 25, 2018) (transferring the case to this District). And this case does not present especially troubling management or administration issues (Factor D). There are no conflict of law issues and, as discussed, much of the evidence can be presented on a class–wide basis, PLS's conclusory statement that "individual inquiries here would be utterly unmanageable on a class–wide basis" notwithstanding. *Compare Bertulli*, 242 F.3d at 299 ("Regarding the manageability of the class action, there is a possibility that some damages calculations would be burdensome. But the economies of class treatment of the numerous common issues weigh in favor of class treatment") *with Norwood v. Raytheon Co*., 237 F.R.D. 581, 604 (W.D. Tex. 2006) ("Plaintiffs' class implicates numerous variations in state law, many of which could lead to conflicts.").

The Court therefore uses its "great discretion" to certify the Proposed Class. *See Mullen*, 186 F.3d at 624 (explaining that the court has "great discretion in certifying and managing a

class"); *see also United States v. Goodale*, 667 F. App'x 91, 91–92 (5th Cir. 2016) (per curiam) (quoting *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (explaining in a different context that "'if a trial judge could have reasonably come to the opposite conclusion when viewing the question as an original matter, the abuse–of–discretion standard of appellate review requires us to defer to the district court.'").

## CONCLUSION

Accordingly, Plaintiff Lucinda Vine and Kristy Pond's Motion for Class Certification [Dkt. #109] is **GRANTED** to the extent described herein.

**IT IS SO ORDERED.**

 **SIGNED this 1st day of April, 2019.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE