# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LUCINDA VINE, KRISTY POND, on | § | |
| behalf of themselves and others similarly | § | |
| situated | § | Civil Action No. 4:18-CV-00450 |
| *Plaintiffs*, | § | Judge Mazzant |
| v. | § | |
| | § | |
| PLS FINANCIAL SERVICES, INC. and | § | |
| PLS LOAN STORE OF TEXAS, INC. | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s (collectively, "PLS") Motion to Stay Proceedings Pending Appeals (Dkt. #132). Having considered the motion and the relevant pleadings, the Court finds that Defendants' Motion is **DENIED**.

## BACKGROUND

PLS is a short-term loan provider (Dkt. #1, Exhibit A). To qualify for a PLS loan, borrowers must present a post-dated or blank personal check for the amount borrowed in addition to a finance charge (Dkt. #1, Exhibit A). PLS tells borrowers it will not deposit the check or pursue criminal charges to recover the loan (Dkt. #1, Exhibit A). But when a borrower misses a payment, PLS will deposit the check, threaten her with criminal prosecution if the check bounces, and misrepresent to the local district attorney that her check was meant to be cashed (Dkt. #1, Exhibit A). The borrower will then receive letters from the district attorney advising her to pay PLS or face criminal charges (Dkt. #1, Exhibit A). Plaintiffs Lucinda Vine and Kristy Pond have filed a class action lawsuit in the Western District of Texas against PLS on behalf of borrowers who received such letters (Dkt. #1, Exhibit A).

PLS responded to the lawsuit by moving to compel arbitration (Dkt. #18; Dkt. #19). PLS notes that, when a borrower enters a loan contract, she agrees to arbitrate any claims against PLS (Dkt. #18). These agreements are governed by the Federal Arbitration Act (Dkt. #18). The Western District Court denied the motion, finding that PLS is not permitted to compel arbitration because PLS substantially invoked the judicial process first (Dkt. #37). It reasoned that, by informing the district attorney of Plaintiffs' bounced checks, PLS "initiated a process that invites Texas district attorneys' offices to address issues that are at stake in the instant litigation." *See Vine v. PLS Financial Srvs., Inc.*, 226 F. Supp.3d 719,727–29 (W.D. Tex. 2016), *aff'd*, 689 F. App'x 800, 807 (5th Cir. 2017). PLS moved to reconsider the Order (Dkt. #44), unsuccessfully, *see Vine v. PLS Financial Srvs., Inc.*, 226 F. Supp.3d 708,719 (W.D. Tex. 2016),[1] and appealed the decision to the Fifth Circuit. PLS argued that "the district court erred by: (1) deciding whether PLS waived its right to compel arbitration by participating in litigation conduct; (2) ignoring the parties' express agreement to arbitrate all disputes, including any litigation–conduct waiver claims; and (3) concluding that PLS waived its right to arbitrate by submitting worthless check affidavits." *See Vine v. PLS Financial Srvs., Inc.*, 689 F. App'x 800, 802 (5th Cir. 2017). The Fifth Circuit, however, was unpersuaded and affirmed the decision. *See id.* at 801–07.

Following the Fifth Circuit's decision, the Texas Supreme Court held that a short-term loan provider does not waive its right to arbitration by submitting unpaid checks and affidavits to local district attorneys, the Fifth Circuit's decision notwithstanding. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 118 (Tex. 2018), *cert denied.*, 139 S.Ct. 184 (2018). The Western District Court indicated that the Texas Supreme Court's decision was not binding (Dkt. #117, Exhibit 2 at pp. 5–6) but

---

[1] The Orders on the Motion to Compel Arbitration and the First Motion to Reconsider were entered before the case was transferred to this District.

invited the parties to submit briefs on whether the motion to compel arbitration should be reconsidered. Consequently, PLS filed a second motion to reconsider in light of the Texas Supreme Court's decision in *Cash Biz*. Because the case was transferred to this District before the motion was resolved, the parties briefing on PLS' Motion came before the Court. Citing the law-of-the-case doctrine and the lack of any intervening change of law by a controlling authority, the Court denied PLS' Motion to Reconsider Denial of Motion to Compel Arbitration and Stay (Dkt. #125). The Court also granted Plaintiffs' Motion to Certify Class (Dkt. #127). As a result of the Court's Orders on each of the Motions, PLS once again appealed to the Fifth Circuit challenging both the denial of its motion to compel arbitration and the order granting class certification of "at least eighty or so borrowers" (Dkt #127 at p. 9). The Fifth Circuit granted leave to appeal (Dkt. #135) and subsequently consolidated the two appeals (Dkt. #144). After the Fifth Circuit granted leave to appeal, PLS filed an Opposed Motion to Stay Proceedings Pending Appeals (Dkt. #132). The Court now considers PLS's Motion to Stay.

## LEGAL STANDARD

"A stay pending appeal 'simply suspends judicial alteration of the status quo.'" *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 429 (2009)). A stay may be automatic or discretionary. If the merits of the case before the district court are directly involved in the merits of an appeal, the district court's proceedings must be stayed. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam). When an automatic stay is not required by an appeal, the district court may nevertheless grant a discretionary stay of the proceedings. *See Weingarten Realty Investors v. Miller*, 661 F.3d 904, 908 (5th Cir. 2011). While a district court is granted discretion in its decision on whether to grant a stay when a stay is not required, "the exercise of that discretion is not unbridled." *In re* First South Sav. Ass'n, 820 F.2d

700, 709 (5th Cir. 1987). "[R]ather, the court must exercise its discretion in light of what this court has recognized as the four criteria for a stay pending appeal." *Id.* Those four traditional factors include: "(1) whether a stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Weingarten Realty Investors*, 661 F.3d at 910; *see also Coastal States Gas Corporation v. Department of Energy*, 609 F.2d 736, 737 (5th Cir. 1979) (providing the same 4-factor test); *Fortune v. Molpus*, 431 F.2d 799, 804 (5th Cir. 1970) (providing the same 4-factor test); *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685 (5th Cir. 1968) (providing the same 4-factor test). Notably, the Supreme Court has held that the "first two factors of the traditional standard are the most critical." *Veasey*, 769 F.3d at 892 (citing *Nken*, 556 U.S. at 434). Accordingly, there is a "widely held view that a stay can never be granted unless the movant has shown that success on appeal is probable." *Ruiz v. Estelle (Ruiz I)*, 650 F.2d 555, 565 (5th Cir. 1981).

There is, however, an exception where the heavy burden of the first factor is not required. Under the exception to the traditional rule, when a court is "confronted with a case in which the other three factors strongly favor interim relief," the court may lessen the burden of the first factor from a strong showing of succeeding on the merits, to a substantial case on the merits. *Ruiz*, 650 F.2d at 565 (citing *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). Thus, when the three remaining factors strongly favor interim relief and the exception applies, "the movant need only present a *substantial* case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting a say." *Ruiz*, 650 F.2d at 565 (emphasis added) (citing *Providence Journal v.*

*Federal Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979); *Houston Insulation Contractors Ass'n v. N.L.R.B.*, 339 F.2d 868, 870 (5th Cir. 1964)); *see also In re* Deepwater Horizon, 732 F.3d 326, 345 (5th Cir. 2013) (citing *Weingarten Realty Investors*, 661 F.3d at 910) (stating "where there is a serious legal question involved and the balance of equities heavily favors a stay . . . the movant only needs to present a substantial case on the merits.")).  This exception requires that the balance of equities—i.e., the other three factors—be "*heavily* tilted in the movant's favor."  *Id.* at 566; *U.S. v. Baylor University Medical Center*, 711 F.2d 38 (5th Cir. 1983).  If the moving party cannot demonstrate this, then it must "make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal."  *Id.*

Whether the analysis falls under the traditional approach or the exception, the movant bears the burden of showing that a stay is warranted.  *Weingarten Realty Investors*, 661 F.3d at 910.  Where "there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward."  *Landis*, 299 U.S. at 255; *see Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (citation omitted) ("'[A] stay is not a matter of right, even if irreparable injury might result otherwise.'  It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'").

## ANALYSIS

PLS submitted its Motion to Stay Proceedings pending its interlocutory appeal of the Court's Order denying Defendant's Motion to Reconsider Denial of Motion to Compel Arbitration and Stay and the Court's Order granting Plaintiff's Motion for Class Certification.  PLS argues that the Court should grant a stay pending its appeal for two reasons.  First, PLS argues that its appeal raises serious legal questions.  Second, PLS argues that, should the Fifth Circuit decide in

PLS' favor, PLS would lose most of the value of their "underlying contractual rights" by losing their ability to arbitrate and by having to "litigate against an entire class in this Court in the meantime (Dkt. #132). Plaintiffs counter that PLS has no likelihood of success on the merits—as PLS has already appealed the arbitration issue. Additionally, Plaintiff's assert that stays under Rule 23(f) are rare, PLS has failed to prove it will be irreparably injured absent a stay, Plaintiffs may suffer substantial injury, and the public interest does not favor a stay. To determine whether to grant PLS' Motion to Stay, the Court will first determine whether an automatic stay applies. If an automatic stay is not required, the Court will then consider whether a discretionary stay should nonetheless be granted under either the traditional requirements or the exception to the traditional requirements.

## I.    Neither issue on appeal requires an automatic stay.

Simply filing an appeal does not compel a district court to stay proceedings pending the appeal's resolution. *Nichols v. Alcatel USA, Inc.*, No. 5:05-CV-43-DF, 2007 WL 9724542, at *1 (E.D. Tex. June 19, 2007) (citing *Taylor v. Sterrett*, 640 F.2d 663, 668 (5th Cir. 1981) ("where an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal.")). With that being said, Congress has enumerated certain appeals which demand an automatic stay. *See generally* 28 U.S.C. § 1292(c); 11 U.S.C.A. § 362 (West 2010); FED. R. CIV. P. 62(a). Typically, the filing of an appeal is "an event of jurisdictional significance" that "confers jurisdiction on the court of appeals and divests the district court of its control over *those aspects of the case involved in that appeal*." *Griggs*, 459 U.S. at 58 (emphasis added). When the matters before a district court "are not involved in the appeal," the district court is free to proceed in adjudicating those matters. *See Weingarten*, 661 F.3d at 908. Therefore, a district court must determine whether the merits of the case before it are so "involved in" the appeal as to

necessitate an automatic stay of its proceedings before it can proceed.  *See Weingarten*, 661 F.3d at 908; *see also Sierra v. Dorel Juvenile Group*, 663 Fed. Appx. 307, 311 n.7 (5th Cir. 2016).  The trial of a case on its merits is involved in an appeal "if it results in the district court's deciding an issue that the appellate court is deciding at the same time." *Weingarten*, 661 F.3d at 909.  Appeals regarding arbitration or class certification typically do not divest a court of its jurisdiction, however, because the issue before the appellate court will not be simultaneously evaluated in the district court.  Because PLS' appeal challenges the Court's Orders denying arbitration and granting class certification, the Court addresses each issue individually.

### a.  PLS's appeal of the Court's Denial of its Motion to Compel Arbitration.

The question of whether an appeal from the denial of a motion to compel arbitration requires an automatic stay has resulted in a circuit split.  The genesis of this split can be found in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982).  On one side, a narrow interpretation of *Griggs* leads courts to hold that an appeal on arbitrability does not affect the merits of the case; thus, the case may proceed in district court.  On the other side, a broad interpretation of *Griggs* results in courts holding that an appeal on arbitrability goes directly to the merits on whether the case can be heard in district court; thus, a stay *must* be granted.  The Fifth Circuit chose the narrow side of this split.  According to the Fifth Circuit, it is not necessary that a district court automatically stay its proceedings pending a party's appeal of a denial of a motion to compel arbitration, because the merits of the case before the district court are unrelated to the case's arbitrability.  *See Weingarten*, 661 F.3d at 909 ("A determination on the arbitrability of a claim has an impact on what arbiter – judge or arbitrator – will decide the merits, but that determination does not itself decide the merits."); *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21 (1983) (stating that the merits of a case are "easily severable"

from the dispute over the arbitrability of those claims). In deciding this issue, the Fifth Circuit explicitly agreed with the Second and Ninth Circuit's decisions holding that a stay is not automatic "because arbitrability is an issue easily separable from the merits of the underlying dispute," thus, a "district court could address the merits while the appellate court reviewed arbitrability." *Weingarten*, 661 F.3d at 909 (citing *Moses H. Cone*, 460 U.S. at 21); *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53–54 (2d Cir. 2004); *Britton v. Co–Op Banking Group,* 916 F.2d 1405, 1411–12 (9th Cir. 1990). In adopting a narrow interpretation of *Griggs* and thus joining the Second and Ninth Circuits, the Fifth Circuit rationalized its decision by stating that this interpretation "better comports with [this Circuit's] precedents and the nature of arbitration."[2] *Id.* Here, the trial of the present case on its merits is not "involved in" a determination of its arbitrability. Therefore, under the Fifth Circuit's narrow interpretation of *Griggs*, the Court is not required to stay its proceedings while PLS' arbitration appeal is pending.

### b. PLS's appeal of Class Certification.

An appeal pursuant to Federal Rule of Civil Procedure 23(f) does not automatically stay the proceedings in the district court. Rather, Rule 23 allows the district court to exercise its discretion to grant or deny the request to stay proceedings. *See Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2015 WL 12710694, at *1 (N.D. Tex. Nov. 24, 2015); Fed. R. Civ. P. 23(f) ("An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders."). Further, findings on issues of class certification are not necessarily involved in the merits of the case. *See Alaska Elec. Pension Fund v. Flowserve Corp.*,

---

[2] On the other side of this split sits the Third, Fourth, Seventh, Tenth, and Eleventh Circuits which all have held "that a notice of appeal automatically stays proceedings in the district court." *Id.*; *see Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 264–66 (4th Cir. 2011); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1160–62 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251–52 (11th Cir. 2004).

572 F.3d 221, 229 (5th Cir. 2009) (a class certification analysis "must focus on the requirements of [Fed. R. Civ. P. 23], and if findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental.") (internal quotations omitted). The Court, therefore, is not *required* to stay proceedings as PLS' appeal of the Order granting Class Certification does not involve the merits of the case and the decision on whether to grant a stay is left to the Court's discretion.

Neither of the issues on appeal require the Court to automatically stay proceedings pending the Fifth Circuit's resolution. The Court now addresses whether to grant a discretionary stay of proceedings.

## II. The Court will not grant a discretionary stay pending PLS's appeal.

Although a stay is not *required*, a district court "nonetheless retains the power to determine, on a case-by-case basis, whether proceedings should be stayed until the appeal . . . has been resolved." *Weingarten*, 661 F.3d at 908. A district court has broad discretion to stay proceedings in the interest of justice and to control its docket. *Landis v. N. Am. Co.*, 229 U.S. 248, 257 (1936). "Proper use of this authority calls for the exercise of judgment which must weigh competing interests and maintain an even balance." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (internal quotations omitted). In weighing competing interest and maintaining an even balance, a district court employs the same four factors discussed in Part I.a., *supra*. The same factors apply whether the Motion to Stay is predicated upon the denial of a Motion to Compel Arbitration or an Order granting Class Certification. Again, those four factors include: "(1) whether a stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public

interest lies." *Weingarten*, 661 F.3d at 910. The moving party "bears the burden of establishing these prerequisites." *Ruiz v. Estelle (Ruiz II)*, 666 F.2d 854, 856 (5th Cir. 1982). The Court addresses each factor in turn below.

### a. PLS has not made a strong showing on the merits nor presented a substantial case on the merits under either the traditional threshold or the exception.

Under the traditional four-factor test, the movant must first show a likelihood of success on the merits. The Fifth Circuit, however, acknowledges an exception to this first factor that requires a lesser threshold requirement. This exception states that "on motions for stay pending appeal the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting a stay." *Ruiz I*, 650 F.2d at 565. The Court first demonstrates that PLS did not show a likelihood of success on the merits, then evaluates its motion under the exception.

### i. PLS has not demonstrated a likelihood of success on the merits of its appeals.

Determining what constitutes a "likelihood of success," is no easy task. As the Second Circuit has stated, "[a]lthough courts have discussed and applied these four criteria on numerous occasions, some uncertainty has developed as to the first factor because of the various formulations used to describe the *degree* of likelihood of success that must be shown." *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002); *see also* 16A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3954 (3d ed. 1999) (citing *Mohammed* as a helpful case for the "various formulations used to describe the *degree* of likelihood of success that must be shown . . . ."). While the analysis "somewhat resembles the test applied in the district court when evaluating a request for a preliminary injunction, [] the differences in posture mean that the two tests are not identical." *See* FEDERAL PRACTICE AND

PROCEDURE § 3954 (citing *National Treasury Employees Union v. Von Raab*, 808 F.2d 1057 (5th Cir. 1987)). Thus, it is apparent that the circuits have, to a large degree, chosen to engage in an ad-hoc decision-making process, rather than a formulaic analysis when it comes to the first factor. Despite what at first glance seems to be a void, there is some guidance to be found. According to the Supreme Court, a sufficient demonstration of a likelihood of success on the merits "requires more than a mere possibility that relief will be granted. *Nken v. Holder*, 556 U.S. 418 (2009). Even more specifically, when determining the likelihood of a movant's success, the Fifth Circuit has explicitly considered the length and care in the district court's opinion on the issue on appeal to indicate a higher likelihood of success. *See Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992) ("A reading of the district court's careful and lengthy opinion is all that is needed to support our conclusion on that factor."). As for class certification, it is well-known that, "[s]tays issued pursuant to Rule 23(f) are discretionary and rare." *In re* Cobalt Int'l Energy, Inc. Sec. Litig., No. CV H-14-3428, 2017 WL 3620590, at *1, (S.D. Tex. Aug. 23, 2017). In *Cobalt*, for instance, the court determined that despite the movants' possibility of success "on certain issues, it [was] unlikely that they [would] succeed in their attempt to have the class certification order fully reversed or otherwise vacated," and thus determined it failed to show a likelihood of success on the merits. *Id.* at *4.

Here, PLS fails to demonstrate a likelihood of success on the merits of its appeal. As for its appeal on arbitrability, the Fifth Circuit has *already* addressed PLS' argument and affirmed the district court's denial of the motion.[3] *See Vine*, 689 Fed. Appx. at 807. That alone should be

---

[3] The law of the case doctrine applies generally to PLS's appeal of the denial of the motion to compel arbitration. This doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 892, 896 (5th Cir. 2006) (quotations omitted). Exceptions to this doctrine "allow reexamination of issues decided on appeal only if '(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice.'" *Gene and Gene*, at 702 (quoting *Fuhrman*, 442 at 896). "The law of the case doctrine applies to matters decided on

11

sufficient to find that PLS has not carried its burden in demonstrating a likelihood of success. Yet, in addition to the similarity of the appeals, *Wildmon* breaks another link in PLS' chain. In *Wildmon*, the Fifth Circuit found that a 13-page district court opinion conclusively demonstrated that the movant did not show a likelihood of success on the merits. *Wildmon*, 983 F.2d at 24. Here, the length and care in the Fifth Circuit's opinion on arbitrability, not to mention the Fifth Circuit directly discussing *Cash Biz*, indicates that the likelihood of PLS' success on appeal is slim. *Id.* Thus, PLS has not demonstrated a likelihood of success on the merits of its arbitrability appeal.

As to PLS' appeal on class certification, the Court's detailed, twenty-six-pages-long opinion on the issue of class certification renders it unlikely that PLS will demonstrate a likelihood of success on the merits. *Wildmon*, 983 F.2d at 24. When coupled with the stronger consideration that appeals pursuant to Rule 23(f) are disfavored, *see Cobalt*, 2017 WL 3620590, at *1, it becomes clear that PLS did not meet its burden. Therefore, the Court determines that PLS did not demonstrate a likelihood of success under the traditional standard. The only remaining question, then, is whether PLS met the requirements of the exception's standard.

### ii. PLS has not met the exception's requirements.

A district court, when determining whether to grant a discretionary stay under the exception to the traditional standard, must look to whether the movant can demonstrate a substantial case on the merits, show a serious legal question is involved in the appeal, and establish that the balance

---

interlocutory appeals. *Id.* (citing *Royal Ins. Co. v. Quinn-L Capital Corp.*, 3 F.3d 877, 881 (5th Cir. 1993)). Further, as the Court addressed in its denial of PLS's motion for reconsideration, courts apply federal law when deciding issues unique to arbitration contracts. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). According to the law of the case doctrine, the Fifth Circuit's previous determination regarding this case's arbitrability is sufficient to justify the Court in its determination that it is unlikely PLS can show a likelihood of success on the merits. Nothing has occurred since PLS filed its first appeal on the arbitration issue that would qualify as an exception to the law of the case doctrine. PLS seems to suggest the *Cash Biz* decision is a change in controlling authority, but the Fifth Circuit is not bound to the decision of the Texas Supreme Court, and in its first opinion explicitly declined to follow the Texas appellate court's reasoning that the Texas Supreme Court affirmed. *See Vine*, 689 Fed. Appx. 800.

of equities weighs in its favor. *See Wildmon*, 983 F.2d at 21; *see also Nevada v. United States Dep't of Labor*, 227 F. Supp. 3d 696 (2017). This is a hard standard to meet. "Only 'if the balance of equities (i.e. consideration of the other three factors) is . . . *heavily tilted* in the movant's favor' will we issue a stay in [a likelihood of success on the merits'] absence, and, even then, the issue must be one with patent substantial merit." *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 361 (5th Cir. 2013) (internal citations omitted). The court addresses first whether PLS can show a substantial case on the merits, then whether a serious legal question is involved in its appeal, and finally whether the balance of equities favors a stay.

### 1. PLS fails to show a substantial case on the merits.

In its determination of whether the movant can show a substantial case on the merits, a district court "is not required to find that ultimate success by the movant is a mathematical probability . . . [and] the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." *Ruiz I*, 650 F.2d at 565 (internal quotation omitted). Moreover, "[t]he Fifth Circuit recognizes that a party presents a substantial case on the merits when there is a lack of precedent to clarify the issues at bar." *Cruson v. Jackson Nat'l Life Ins. Co.*, No. 4:16-CV-00912, 2018 WL 2937471, at *4 (E.D. Tex. June 12, 2018) (finding a substantial case on the merits when the issue was novel, serious, and there was a significant lack of precedent). In *Sw. Airlines Co. v. Transp. Workers Union of Am. AFL-CIO Local 555*, No. 3:16-CV-3536-G, 2018 WL 2317710, at *2 (N.D. Tex. May 22, 2018), for example, the court concluded that the moving party presented a substantial case on the merits at least in part due to the court's previous memorandum opinion and order regarding the issue on appeal. This order revealed "some possible tension in case law between the substantial amount of deference federal courts must afford arbitrations under the Railway Labor Act, and the need for judicial intervention when an arbitrator

interjects his or her own personal brand of industrial justice." *Id.* Despite this, the court still analyzed whether the balance of equities heavily favored a stay before making its final determination. *Id.* Although it is unlikely that PLS will present a substantial case on the merits, the Court will analyze the other factors of the exception before making its determination. *Ruiz I*, 650 F.2d at 565.

### 2. There is no serious legal question involved in either issue on appeal.

A serious legal question is one that could have a broad impact on federal and state relations, or an otherwise far-reaching effect of public concern. *Wildmon*, 983 F.2d at 23–24 (citing *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983)). For example, the Fifth Circuit determined in *Baylor* that "the serious legal question involved was whether Medicare and Medicaid payments constitute federal financial assistance within the meaning of the Rehabilitation Act because 'that could have a broad impact on federal/state relations' which could open 'the doors of private institutions to the probing tools of an HHS investigation.'" *Id.* (quoting *Baylor*, 711 F.2d at 40). Because PLS raises two separate legal questions on appeal, the court addresses the seriousness of each in turn.

### a. There is no serious legal question presented regarding PLS' appeal of the denial of its motion to compel arbitration.

PLS argues that the "serious legal question" here is whether it waived its right to arbitration by invoking the judicial process when it submitted worthless check affidavits to the district attorneys' offices. However, "[b]ecause this is merely a private contractual matter regarding whether arbitration is required, no substantial legal question is involved." *Weingarten*, 661 F.3d at 910 (citing *Wildmon*, 983 F.2d at 23). Further, the exact "serious legal question" PLS alleges has already been addressed in great detail. *See Vine*, 689 Fed. Appx. 800. The Fifth Circuit, in its

decision on PLS' first appeal of the denial of its Motion for Reconsideration of the denial of PLS'

Motion to Dismiss and to Compel Plaintiffs to Arbitration, decided that "the district court correctly

found that Vine and Pond plausibly alleged that PLS waived arbitration when it submitted false

worthless check affidavits." *Id.* at 804. PLS also argues that the recent Texas Supreme Court

decision in *Cash Biz* is intervening law that will impact the Fifth Circuit's earlier decision. The

Fifth Circuit, however, explicitly disagreed with the Texas Court of Appeals' reasoning regarding

*Cash Biz*, which was identical to that of the Texas Supreme Court:

> As the dissent in *Cash Biz* aptly noted, here, 'we are presented with the unique
> situation of a civil lawsuit and a criminal proceedings, both of which arise out of
> the same civil debt.' *Cash Biz*, 2016 WL 4013796, at *10 (Martinez, J., dissenting).
> Moreover, it is alleged that the criminal proceedings were an integral component
> of PLS's litigation strategy to collect on outstanding debt. If PLS attempted to
> 'game the system' by initiating theft by check proceedings in place of submitting
> collection actions to an arbitrator, PLS should not be allowed 'a second bite at the
> apple through arbitration' to resolve related issues. *See Cargill Ferrous Int'l v. SEA
> PHX. MV*, 325 F.3d 695, 701 (5th Cir. 2003) ("Under the facts of this case, it is
> clear Serene is not gaming the system by seeking a win at trial, and in the case of
> loss, anticipating a second bite at the apple through arbitration.").

> In addition, we also agree with the *Cash Biz* dissent that the majority in that case
> did not sufficiently consider the critical role that the Defendant played in the
> criminal proceedings as the complainant. *See Cash Biz*, 2016 WL 4013794, at *10
> (Martinez, J., dissenting) ("While the formal parties in a criminal proceeding are
> the defendant and the state of Texas, the victim or complainant [sic] has a personal
> interest in the prosecution and thus plays a unique role in criminal proceedings.").
> Here, Vine and Pond allege that PLS had a great 'personal interest in the
> prosecution' as it constituted a means to achieve repayment of its loans while
> avoiding arbitration. Furthermore, documents incorporated by reference into Vine
> and Pond's complaint arguable show that PLS drove all theft by check criminal
> proceedings when it submitted the worthless check affidavits to local district
> attorneys' offices. In other words, had PLS not submitted the worthless check
> affidavits, "no criminal prosecution would have occurred." *See id.* at *9 (Martinez,
> J., dissenting).

> Therefore, by allegedly submitting false worthless check affidavits, PLS "invoked the judicial process to the extent it litigate[d] a specific claim it subsequently [sought] to arbitrate." *See Subway Equip. Leasing Corp.*, 169 F.3d at 328.

*Id.* at 806–07. There is no reason to think that the Fifth Circuit would change its reasoning in light of the Texas Supreme Court decision. In its opinion, the Texas Supreme Court acknowledges its disagreement with the Fifth Circuit, and states that it "agree[s] with the dissenting" Judge in *Vine*. *Cash Biz*, 551 S.W.3d at 119–20. It concludes, "as he did, that although some lenders may be 'gaming the system' by taking actions like the lenders took there and as Cash Biz took here, more is required for waiver of a contractual right to arbitrate." *Id.* at 119–20. The Fifth Circuit explicitly declined to follow the same reasoning. Further, and as the Court has already addressed, the law of the case doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman*, 442 F.3d at 896 (quotations omitted). The Fifth Circuit's careful opinion regarding PLS' argument, therefore, may not be reexamined absent a change in applicable law. PLS fails to demonstrate that its appeal of the arbitrability of its case is a sufficiently serious legal question to favor a discretionary stay.

### b. There is no serious legal question presented regarding PLS's appeal of the class certification decision.

When an "overwhelming majority of cases support certification of a class," it is less likely a serious legal question is involved in a class certification decision. *M.D. v. Perry*, No. CIV.A. C-11-84, 2011 WL 7047039, at *1 (S.D. Tex. July 21, 2011). Notwithstanding *Perry*, the Fifth Circuit has granted a stay before. In *In re* Deepwater Horizon, the Fifth Circuit determined that serious legal questions were present in a case involving "one of the *largest* and *most* novel class actions in American history." 732 F.3d 326, 345 (5th Cir. 2013) (emphasis added). These questions, the court continued, were so serious that they would "affect the course of class action

16

law in this country going forward, and the class action as a suitable vehicle for the resolution of conflict for businesses and litigants." *Id.* Recognizing that the balance of equities favored the movant, the movant had demonstrated a substantial case on the merits, and the serious legal question presented, the Fifth Circuit granted a *tailored* stay. *Id.* at 345. It is readily apparent that the decision to grant class certification here in no way involves serious legal questions of the caliber involved in *Deepwater Horizon*. Even so, the balance of equities consideration takes great importance in the determination of whether to grant a discretionary stay.

### 3. The balance of equities weighs against granting a stay.

A determination of the balance of equities, "i.e. consideration of the other three factors," is critically relevant to the court's determination. *Ruiz I*, 650 F.2d at 565–66. If a court finds this balance "is not *heavily* tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits." *Id.* (emphasis added). Each of the three factors is addressed below.

### a. PLS will not experience irreparable injury if this proceeding is not stayed.

The party moving to stay proceedings must prove more than just a possibility of irreparable injury. *See Nken v. Holder*, 556 U.S. at 418 (2009). Further, an injury is not irreparable if it can be sufficiently undone with monetary remedies. *See Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (internal quotations omitted). As it relates to class action litigation, "the prospect of having to engage in discovery is not irreparable harm for purposes of a stay pending appeal." *In re* Cobalt, 2017 WL 3620590, at *4. The Court has, in the past, acknowledged that "the cost of pretrial litigation and discovery for

defending a class action lawsuit with numerous plaintiffs can amount to irreparable hardship." *Cruson*, 2018 WL 1937471, at *5. Importantly, *Cruson* involved a class numbering "in the *thousands* or *tens of thousands*." *Id.* (emphasis added). Although defending a class action lawsuit may cause hardship, typically "the expense and annoyance of litigation is part of the social burden of living under government." *F.T.C. v. Standard Oil Co. of Calif.*, 449 U.S. 232, 244 (1980) (internal quotations omitted); *see Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and un-recoupable cost, does not constitute irreparable injury.").

The class in this case contains approximately eighty borrowers, a number far from reaching the level the Court has identified in the past as capable of causing irreparable harm. Thus, no irreparable harm will befall PLS based upon class size. The cost of defending the case while the potential for arbitration looms, however, is a closer call. According to PLS, if "Defendants are forced to proceed through discovery, pretrial motions, and trial before this Court, they will already have lost most of the benefits of their contracted-for rights, even if the Fifth Circuit ultimately agrees with them on both issues" (Dkt. #132). The Court is mindful of the possibility that the Fifth Circuit's decision could render any subsequent outcomes in this case moot. But the Fifth Circuit has addressed this issue already: "The only grounds for irreparable injury proffered by Miller are that he will "be required to incur the time and expense of litigation and may lose the benefits of arbitration. . . . [W]e reject the idea that arbitration ensures substantial speed and cost savings, so these considerations alone do not constitute irreparable injury."[4] *Weingarten Realty Investors*, 661

---

[4] In a footnote, the Fifth Circuit stated that the argument that a movant would be "forced to engage in discovery absent a stay, which would cause irreparable injury because such discovery could jeopardize its right to arbitrate" could have been a potentially valid argument if the opposition to discovery had been predicated upon the provision of sensitive information that was meant to be limited by arbitration. *Weingarten Realty Investors*, 661 F.3d at 913 n.19 (discussing *Trefny v. Bear Stearns Sec. Corp.,* 243 B.R. 300, 309–10 (S.D.Tex.1999)). But, because the movant failed to raise the argument there, the argument was waived. *Id.* Here, PLS failed to raise such an argument. Thus, the argument is waived here, too.

F.3d at 913. Moreover, should PLS be successful in either of the issues on appeal, its harm could be compensated through monetary or other corrective relief, and therefore would not be irreparable.[5] The Court is thus unconvinced that this factor of the balance of the equities weighs in favor of granting a discretionary stay.

### b. Plaintiffs will be injured if a stay of the proceedings is granted.

This factor looks to whether a stay "will cause [non-movants] difficulties in presenting [their] case." *Weingarten*, 661 F.3d at 913. When a class action is pending, the Fifth Circuit has stated that extensive delays in proceedings "jeopardize [plaintiffs'] ability to obtain discovery from individuals whose memories may be fading as time passes, as well as their ability to obtain and collect a judgment against [the defendant]." *In re* Cobalt, 2017 WL 3620590, at *4. The plaintiffs in *Cobalt*, for example, filed their class action in November 2014, and the district court determined, *three years later*, whether to stay pending defendant's Rule 23(f) appeal. *Id.* at *2. The court determined this period of time prejudiced plaintiffs in bringing their case. *Id.*

In the present case, the Plaintiffs, much like those in *Cobalt*, have been waiting for more than *three years* since they initially filed suit. During this time, Plaintiffs were subjected to a year-long stay of proceedings pending PLS' first appeal. This constitutes sufficient harm to the non-moving party, as it increases the difficulty they already face presenting their case. *See Landis*, 299 U.S. at 255; *Ind. State Police Pension Tr.*, 556 U.S. at 961. Indeed, "[e]very day that passes, finding witnesses and class members becomes more difficult" (Dkt. #134). For these reasons, the Court finds this factor weighs against granting the motion to stay.

---

[5] Even if compensation is not possible, this does not tilt the scale. "Mere litigation expense, even substantial and un-recoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51–52 (1938).

### c. The public interest favors denying the motion to stay.

There is a "general public policy of preserving judicial resources from the risk of reversal," especially where a difficult question is presented on appeal; but where the movant fails to present a likelihood of success on the merits, there is "little reason to invoke" this policy interest. *Weingarten*, 661 F.3d at 913. In these cases, rather, the "public interest in speedy resolution of disputes prevails." *Id.* It is also less likely that a stay will further judicial economy when litigation processes would need to be conducted whether movant's appeal is successful or not. *See In re Cobalt*, 2017 WL 3620590, at *4. The Court has already determined PLS fails to demonstrate a likelihood of success on the merits of its appeal. Therefore, there is no reason to invoke the public policy of preserving judicial resources. The interest in speedy resolution of disputes prevails, and the public interest favors denying the motion to stay.

All of the factors considered in a determination of the balance of equities favor denying the motion to stay. PLS fails to demonstrate it will suffer *irreparable* harm, Plaintiffs are likely to be harmed should these proceedings be delayed any further, and the public interest in speedy resolution of cases outweighs an interest in preserving judicial economy.

### b. PLS fails to show that the remaining three factors weigh in favor of the court granting a discretionary stay pending PLS's appeals.

The last three factors considered in the traditional four-factor test are considered in the above analysis of the balance of equities. The first two factors are the most critical to an analysis of the traditional four-factor standard. *See Sw. Airlines Co.*, 2018 WL 2317710, at *1. When a movant fails to show a likelihood of success on the merits and the balance of equities does not support granting a stay, the district court should deny the motion to stay the proceedings pending the movant's appeal. *Weingarten*, 661 F.3d at 913.

PLS failed to show that the two most critical factors the Court considers favor a stay: there is not a likelihood of success on the merits of either issue on appeal and there is no demonstration that PLS will experience irreparable harm absent a stay. The balance of equities also weighs against granting a stay, and PLS failed to show it should be allowed a lower threshold requirement under the exception. For these reasons, the Court denies PLS's Motion to Stay Proceedings Pending Appeal.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Stay Proceedings Pending Appeals (Dkt. #132) is hereby **DENIED**.

**SIGNED this 9th day of September, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE