# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LUCINDA VINE, KRISTY POND, on behalf of themselves and others similarly situated<br>    *Plaintiffs*,<br>v.<br><br>PLS FINANCIAL SERVICES, INC. and PLS LOAN STORE OF TEXAS, INC.<br>    *Defendants*. | § § § § § § § § § § § | Civil Action No. 4:18-CV-00450<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Compel Discovery (Dkt. #143). Having considered the motion and the relevant pleadings, the Court finds that the Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

PLS is a short-term loan provider (Dkt. #1, Exhibit A). To qualify for a PLS loan, borrowers must present a post-dated or blank personal check for the amount borrowed in addition to a finance charge (Dkt. #1, Exhibit A). PLS tells borrowers it will not deposit the check or pursue criminal charges to recover the loan (Dkt. #1, Exhibit A). But when a borrower misses a payment, PLS will deposit the check, threaten her with criminal prosecution if the check bounces, and misrepresent to the local district attorney that her check was meant to be cashed (Dkt. #1, Exhibit A). The borrower will then receive letters from the district attorney advising her to pay PLS or face criminal charges (Dkt. #1, Exhibit A). Plaintiffs Lucinda Vine and Kristy Pond have filed a class action lawsuit in the Western District of Texas against PLS on behalf of borrowers who received such letters (Dkt. #1, Exhibit A). The case has since been transferred to Eastern District of Texas.

On July 19, 2018, the Court issued the Order Governing Proceedings (Dkt. #107). In the Order, the Court instructed the parties to produce "[a] copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party" (Dkt. #107). Under the Order Governing Proceedings, "relevant" is defined by Local Rule CV-26(d) (Dkt. #107). Local Rule CV-26(d) defines relevant as:

> (1) information that would not support the disclosing parties' contentions; (2) those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) information that is likely to have an influence on or affect the outcome of a claim or defense; (4) information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and (5) information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense

Local Rule CV-26(d).

On April 1, 2019, the Court entered its Amended Memorandum Opinion and Order certifying Plaintiffs' class (Dkt. #127). Per the Court's Order, the certified class includes:

> Texas residents who (1) received a payday loan (as defined by Tex. Fin. Code § 393.221) from a PLS Loan Store, (2) failed to timely pay back the payday loan, (3) had a criminal complaint filed against them by PLS Loan Store and/or PLS Financial Services after December 17, 2011 for a bad check to collect or recover this payday loan, (4) received a letter from the District Attorney advising them to pay off the payday loan and certain fees or face criminal prosecution, and (5) paid some or all of the fees referenced in this letter.

(Dkt. #127). Shortly thereafter, PLS appealed the Court's Orders in Dkt. #37 and Dkt. #125 (Dkt. #129) and filed Defendants' Motion to Stay Proceedings Pending Appeals (Dkt. #132).

Following the entrance of the Court's Order certifying a class action and PLS' appeal and Motion to Stay Proceedings Pending Appeals, Plaintiffs filed Plaintiffs' Motion to Compel Discovery (Dkt. #143). The Motion was filed on May 31, 2019 (Dkt. #143). Since Plaintiffs' filed their Motion to Compel, the Court has denied PLS' Motion to Stay (Dkt. #148).

In Plaintiffs' Motion to Compel Discovery, Plaintiffs aver that PLS has inappropriately objected to eleven (11) interrogatories and twenty-four (24) requests for production that Plaintiffs served on PLS (Dkt. #143). The requested discovery falls into several categories, according to Plaintiffs. Those categories, as characterized by Plaintiffs, include: (1) Interrogatories Nos. 1 and 2 and Requests for Production Nos. 1 and 2 which pertain to potential class members; (2) Interrogatories Nos. 3 through 10 and Requests for Production Nos. 3 through 11 which pertain to claims in the case and the size and scope of the class; (3) Interrogatory No. 8 and Requests for Production Nos. 12 through 15 which relate to information and documents of proposed class members; and (4) Requests for Production Nos. 16 and 17 which pertains to PLS' net worth (Dkt. #143).[1] Plaintiffs argue that the requested discovery should be granted as PLS has improperly objected to the interrogatories and requests for production. More specifically, Plaintiffs argue that PLS' Motion to Stay does not provide a basis for objecting to discovery because the case should not be stayed (Dkt. #143).[2] Further, Plaintiffs contend that they are entitled to discover the scope and size of the proposed class and that the interrogatories and requests for production go to the same (Dkt. #143). Plaintiffs also argue that they are entitled to discover information and documents relating to absent class members (Dkt. #143). The requested discovery, Plaintiffs conclude, is also narrowly tailored and thus should be permitted (Dkt. #143).

On June 14, 2019, PLS filed Defendants' Response in Opposition to Plaintiffs' Motion to Compel Discovery (Dkt. #145). PLS argues that the Court should deny Plaintiffs' Motion to Compel Discovery for several independent reasons (Dkt. #145). First, PLS argues that the case should be stayed (Dkt. #145). Second, PLS argues that Plaintiffs' Motion fails to "challenge numerous objections asserted by Defendants, and does not even mention over half a dozen requests

---

[1] Requests for Production Nos. 18 through 24 are not mentioned in Plaintiffs' Motion.
[2] The Court has already ruled that a stay is not warranted in this action (Dkt. #148).

to which they apparently seek to compel a supplemental response" (Dkt. #145). On this basis alone, PLS argues, Plaintiffs' Motion should be denied. Third, PLS contends that "for the requests/objections Plaintiffs do challenge, the Court should sustain Defendants' objections" (Dkt. #145). Discovery should not be permitted, PLS continues, because Plaintiffs' attempts are geared toward discovery of absent class members which PLS argues is only permissible pre-certification (Dkt. #145). Further, PLS objects to Plaintiffs' attempt to discover information outside the time period allegedly covered by the class as certified by the Court (Dkt. #143, Exhibit A). Finally, PLS objects to Plaintiffs' attempt to discover purportedly confidential financial information (Dkt. #145). The Court now turns to Plaintiffs' Motion to Compel Discovery.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery."

FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of

the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

**ANALYSIS**

As previously discussed, Plaintiffs have placed the requested discovery into four categories. Rather than proceeding with these categories, the Court finds it more beneficial to proceed with four categories of its own. Accordingly, Part I of the Court's opinion will discuss what the Court will term "Incomplete Disputes." Part II will then address Interrogatories Nos. 1–3 and 8–10 & Requests for Production Nos. 1–3, 6–7, 10, and 12–15. Finally, Part III will address Requests for Production Nos. 16–17. Before the Court proceeds to these categories, however, it must first address a preliminary matter. The Court already ruled on Defendants' Motion to Stay Proceedings Pending Appeals (Dkt. #132). The Court denied said Motion (Dkt. #148). Consequently, any argument proffered by PLS that Plaintiffs are not entitled to discovery because a stay is merited is rejected. PLS' Response to Request for Production Nos. 4–5, 8–9, and 20–21, as well as PLS' Response to Interrogatory Nos. 4–7, and 11 are grounded solely in arguments that the case should be stayed. Finding such arguments lacking, as dictated above, Plaintiffs' Motion to Compel as to those Interrogatories and Requests for Production is granted. Having addressed this overarching issue, the Court now considers each category of requested discovery independently.

I. Incomplete Disputes

In order to satisfy its burden, a party objecting to discovery "must make a specific, detailed showing of how a request is burdensome [or overbroad]." *S.E.C. v. Brady*, 238 F.R.D. 429, 437

(N.D. Tex. 2006) (citing *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000)). To that end, "[a] mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *Id.* (citing *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511–12 (N.D. La. 2000)). Summary objections are rejected because "[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *Id.* (citing *Harding v. Dana Transport Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996)). Thus, "[a] party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id.* (citing *Waddell & Reed Financial, Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004); *see also McLoed, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (holding that the use of "Rambo tactics"—i.e., merely objecting that a request is "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive"—is inadequate to "voice a successful objection.").

The purpose of these requirements is to instill civility in attorneys, efficiency in the judiciary, and justice in the discovery process. Indeed, as the Fifth Circuit stated in *Quarles*:

> In a recent case we observed, "Regardless of [plaintiff's] intentions, or inattention, which led to the flouting of discovery deadlines, ["Rambo tactics"] are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution . . . ." *Geiserman v. MacDonald,* 893 F.2d 787, 792 (5th Cir.1990) (footnote omitted).
>
> The same condemnation of abusive discovery tactics should apply here. Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests.

*Id.* at 1486.  Once a party objecting to discovery provides a proper objection, the party seeking to compel particular information must then "address each objection raised by Defendants and show why each discovery request is relevant to his claims."  *Johnson v. Tune*, 2011 WL 13196545, at *1 (E.D. Tex. Jan. 25, 2011) (Bush, M.J.).

PLS proffers the argument that "the Court must deny Plaintiffs' Motion to Compel as to Interrogatories 1–3 & 8–10 and Requests for Production 1–3, 6–7, 10, 12–15, & 18–24 because Plaintiffs have not disputed all of Defendants' objections thereto" (Dkt. #145).  In the same vein, PLS argues that Plaintiffs' Motion to Compel "does not even mention Request for Production 18-24, so the Court must deny Plaintiffs' Motion to the extent it seeks to compel supplemental responses to those unaddressed Requests" (Dkt. #145).  While PLS is correct that Plaintiffs inadequately addressed some objections by PLS, PLS' objections, in the first place, are unacceptable.

PLS' objections to Plaintiffs' Interrogatories and Request for Production are nothing short of the "Rambo tactic" boilerplate legalese that the Fifth Circuit discussed in *Quarles*.  *Quarles*, 894 F.2d 1482, 1485–87.  To be sure, only a handful of PLS' objections to Plaintiffs' discovery requests address the particular facts of the case.  The majority of PLS' objections are merely grounded in vague objections that a request is overbroad, unduly burdensome, outside of the time period certified by the Court, or irrelevant.  With PLS failing to carry its burden in objecting, it is only fitting that Plaintiffs would not respond in a way that PLS would find acceptable.  The Court accordingly rejects each of PLS' objections as inadequate, *Brady*, 238 F.R.D. at 437, save its objections relating to the issue of class certification.[3]  As a result, the Court will only consider the

---

[3] PLS, like the majority of its objections, copies and pastes the following objection to a variety of Plaintiffs' requests: "Defendants further object to this Request because it seeks information outside the time period covered by the class as certified by the Court" (Dkt. #143, Exhibit A).  PLS not only failed to carry its burden in its objection to the relevant time period, PLS' objection is also meritless.  Potential correspondence between PLS and other entities involved in

8

class certification objection for Interrogatories Nos. 1–3 and 8–10 as well as Requests for Production Nos. 1–3, 6–7, 10, 12–15. This means Plaintiffs will not be penalized for failing to respond to PLS' Rambo tactic objections. With that being said, a handful of Requests for Production remain to be discussed before the surviving objections can be analyzed.

Plaintiffs' Motion to Compel Request for Production No. 11 is granted because PLS' objections do not include objections as to class certification—the only objection that the Court finds PLS carried its burden on and thus merits review. *See Brady*, 238 F.R.D. at 437. Plaintiffs' Motion to Compel Request for Production Nos. 16–17 will be discussed in Part III, *infra*, given that Plaintiffs' requests concern tax returns. Plaintiffs' Motion to Compel Requests for Production 18–19 and 22–24 is denied because Plaintiffs failed to challenge, or mention, PLS' objections in its Motion when PLS objected specifically to requests that were indeed overbroad. *See Johnson*, 2011 WL 13196545, at *1.[4] The Court now considers the issues surrounding Interrogatories Nos. 1–3 and 8–10 as well as Requests for Production Nos. 1–3, 6–7, 10, 12–15.

II. Interrogatories Nos. 1–3 and 8–10 & Requests for Production Nos. 1–3, 6–7, 10, and 12–15

Prior to class certification, "a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action." *Pittman v. E. I. duPont de Nemours & Co., Inc.*, 552 F.2d 149, 150 (5th Cir. 1977). This means that a plaintiff "is entitled to some leeway in attempting to define the proper parameters of his proposed class." *Id.* A district court, as in all discovery matters, still retains "broad discretion in limiting the scope of discovery" at the pre-certification stage. *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) (citing *Pan-Islamic*

---

this matter may have occurred prior to the filing of a complaint against a class member. Thus, Plaintiffs' requests are directed toward the discovery of potentially relevant information. *See* FED. R. CIV. P. 26; Local Rule CV-26(d).

[4] Plaintiffs' Motion to Compel Request for Production Nos. 20 and 21 would have likewise been denied for Plaintiffs' failure to challenge PLS' objections, but PLS' only objection was that the case should be stayed and that it would otherwise produce the requested documents. The Court previously rejected any argument that the case be stayed, thus, PLS has no remaining objection that Plaintiffs should have addressed.

9

*Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 550 (5th Cir. 1980), cert. denied, 454 U.S. 927, 102 S. Ct. 427, 70 L.Ed.2d 236 (1981)).

Following class certification, class counsel has a responsibility to conduct adequate discovery on behalf of the class. As *Johnson v. Shreveport Garment Co.* articulated:

> Because the rights of numerous persons not before the Court are at stake, pretrial preparation on behalf of the class must proceed with greater vigor and thoroughness, both factually and legally, than the Court might expect in a suit between parties all of whom are present at all stages of pretrial and trial.
>
> The standard of thoroughness spills over into the discovery stage. The liberal discovery procedure provided by the federal rules allows counsel for all parties to an action to be prepared for trial on all factual issues and to preserve and protect their clients' positions and evidence. At this stage, as at the early pretrial stage, class counsel owes a greater duty to absent clients than to those who are present. Counsel must undertake substantial discovery to preserve testimony in favor of the class, to rebut possible claims by the parties adverse to the class, and to impeach opposing witnesses. Certainly counsel should propound some interrogatories to opposing parties, and he or she almost always should undertake to depose important witnesses in writing or orally.

422 F. Supp. 526, 535 (W.D. La. 1976), aff'd, 577 F.2d 1132 (5th Cir. 1978).[5] Thus, class counsel is entitled, as in non-class action cases, to seek relevant information that will aid in the prosecution of his or her case.[6] *See* FED. R. CIV. P. 26. In the Eastern District of Texas, "relevant" is specifically defined. Indeed, under the Order Governing Proceedings (Dkt. #107), "relevant" is defined by Local Rule CV-26(d). Local Rule CV-26(d) defines relevant as:

> (1) information that would not support the disclosing parties' contentions; (2) those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) information that is likely to have an influence on or affect the outcome of a claim or defense; (4) information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and (5) information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense

Local Rule CV-26(d).

---

[5] While the *Johnson* opinion concerned whether to revoke class certification, rather than an opinion about seeking discovery relating to absent class members post-class certification, the principle that liberal discovery should be permitted still holds.
[6] How liberal discovery pertains to absent class members will be discussed below.

The issue presented here is whether Plaintiffs may seek discovery from PLS, post-class certification, regarding PLS' dealings with absent class members. PLS argues that Plaintiffs may not seek such discovery because Plaintiffs are: (1) seeking impermissible information about the size and scope of an already certified class; and (2) Plaintiffs have not met their burden to obtain discovery from absent class members. To the extent that Plaintiffs seek discovery merely to define the class' size or scope, PLS is correct. The class has already been certified and defined. The Court, in its discretion, sees no need for Plaintiffs to seek further discovery as to the class' size and scope. While Plaintiffs respond by arguing that *Pittman*, 552 F.2d at 150, *Stewart*, 669 F.2d at 331, and *Johnson*, 422 F. Supp. at 535, support Plaintiffs' right to seek such discovery, those cases are distinguishable as each case concerned pre-certification discovery. Consequently, the Court denies Plaintiffs' Motion to Compel Interrogatories Nos. 1–2 and Requests for Production Nos. 1–2 which Plaintiffs admit are grounded in size and scope discovery.

For Plaintiffs' remaining requests, PLS argues that Plaintiffs have not met their burden to obtain discovery from absent class members. For this proposition, PLS cites *Southern Ave. Partners LP v. Blasnik*, 2013 WL 11089796, at *3 (N.D. Tex. Sept. 19, 2013). *Blasnik* concerned a plaintiff, Deborah Bash Mullen, who sought to withdraw as a named plaintiff and proposed class representative from the case. *Id.* at *1. After the defendants continued to pursue discovery from Mullen following her notice of withdrawal, Mullen sought a protective order. *Id.* With these facts before the court, the court proceeded to analyze whether discovery of an absent class member, by a *defendant*, was permitted. *Id.* The court began its opinion by stating the general proposition that "the burden to obtain discovery from absent class members is very high." *Id.* Despite recognizing this burden, the court held that defendants' attempts to seek discovery from Mullen—again, an absent class member—should be permitted. *Id.* at *3. The court permitted such discovery only

11

because it found that Mullen had injected herself into the litigation by "initially choosing to file suit as a class representative and actively participating as such for almost four years." *Id.* at *3 (quoting *Antoninetti v. Chipotle, Inc.*, 2011 WL 2003292, at *1 (S.D. Cal. May 23, 2011)).

PLS contends that *Blasnik* supports its argument that *Plaintiffs* cannot seek information from *PLS* pertaining to absent class members without satisfying a high burden. But *Blasnik* did not concern discovery when a *plaintiff* seeks discovery from a *defendant* so as to learn about the defendant's dealings with the class as a whole. Rather, *Blasnik* concerned the typical case of a defendant seeking discovery from an absent class member—an entirely different situation that is often not permitted. *See* WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 1796.1 ("The major difficulty is in making certain that discovery is not used to threaten or harass the absent members so that they feel it necessary to opt out of actions under Rule 23(b)(3). Thus, on a case-by-case basis the court must balance *defendant's* need for detailed information against the burden on the absent class members, who did not initiate the action and are not actively participating in it.") (emphasis added) (footnotes omitted). PLS' reliance on *Blasnik* is accordingly misplaced. Because the Court finds the information requested is relevant to the case, *see* Local Rule CV-26(d), and PLS' reliance on *Blasnik* is misplaced, the Court finds, in its discretion, that the remainder of Plaintiffs' Motion to Compel—specifically, Plaintiffs' Motion to Compel Interrogatories Nos. 3 and 8–10 as well as Requests for Production Nos. 3, 6–7, 10, and 12–15—should be granted.

III.     Request for Production Nos. 16 and 17

"Income tax returns are highly sensitive documents, and courts are reluctant to order their routine disclosure as part of discovery." *RYH Properties, LLC v. West*, 2010 WL 11531154, at *2 (E.D. Tex. Dec. 15, 2010) (citing *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*,

2 F.3d 1397, 1411 (5th Cir. 1993) (citing *SEC v. Cymaticolor*, 106 F.R.D. 545, 547 (S.D. N.Y. 1985))). "Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system." *Id.* (citing *Natural Gas*, 2 F.3d at 1411). "For a court to order disclosure of tax returns, the court must find both 'that the returns are relevant to the subject matter of the action,' and 'that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.'" *Id.* (citing *Mohnot v. Bhansali*, 2001 WL 515242, at *1 (E.D. La. 2001)).

The aforementioned limitation on tax returns does not mean that evidence of net worth is off limits. On the contrary, evidence of net worth, outside of tax returns, is generally "relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damage claim." *See Wright v. Weaver*, 2009 WL 5170218, at *4 (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003)). Indeed, "[w]hen a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages." *Amin-Akbari v. City of Austin, Tex.*, 2014 WL 4657491, at *2 (W.D. Tex. Sept. 16, 2014) (citing *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990)). With that being said, "when courts have ordered that individual defendants disclose their financial information, they have sometimes limited production to a statement of the defendant's net worth." *Id.* (citing *CEH, Inc. v. FV Seafarer*, 148 F.R.D. 469, 473 (D.R.I. 1993)).

Here, Plaintiffs' request that PLS produce "all documentation regarding the net worth of PLS Financial Services, Inc. [and PLS Loan Store of Texas, Inc.] for the past five years, including tax returns, income statements, SEC filings, audits, and financial statements" (Dkt. #143, Exhibit

13

A). Plaintiffs, however, have not demonstrated that PLS Financial Services and PLS Lone Store of Texas' net worth cannot be discovered through some less intrusive manner. *See RYH Properties*, 2010 WL 11531154, at *2. Moreover, the Court sees no reason why PLS Financial Services and PLS Lone Store of Texas must disclose a plethora of financial documentation when Plaintiffs are merely attempting to ascertain each defendant's net worth. Consequently, the Court finds that limiting "production to a statement of [each] defendant's net worth" is appropriate. *See Amin-Akbari*, 2014 WL 4657491, at *2. By limiting production to a statement of each defendant's net worth, Plaintiffs will receive the discovery they seek while PLS Financial Services and PLS Lone Store of Texas will be protected from having to disclose a variety of sensitive information that is otherwise unnecessary. Accordingly, the Court grants Plaintiffs' Motion to Compel Requests for Production Nos. 16–17 with the qualification that PLS Financial Services and PLS Lone Store of Texas need only produce a statement of each of their net worth's[7].

---

[7] PLS argues that PLS Financial Services should not be required to comply with Plaintiffs' request given that Plaintiffs have no evidence against PLS Financial Services. Such argument was not raised in PLS' objections. Nonetheless, the Court is unpersuaded at this juncture that PLS Financial Services should not have to comply with said discovery. PLS' argument is accordingly rejected.

# CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion to Compel Discovery (Dkt. #143) is **GRANTED** as to Interrogatories Nos. 3–11 and Requests for Production Nos. 3–17 and 20–21. Production as to Requests for Production Nos. 16–17 is narrowed in accordance with the Court's Memorandum Opinion and Order.

It is further **ORDERED** that Plaintiffs' Motion to Compel Discovery (Dkt. #143) is **DENIED** as to Interrogatories Nos. 1–2 and Requests for Production Nos. 1–2, 18–19, and 22–24.

**SIGNED this 24th day of January, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE